PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Dania Slim
Rahman Connelly
Kwame O. Akuffo

*Attorneys for Petitioners Shaun Collyer and*
*Richard A. Ferguson, as Business Rescue Practitioners*
*of Comair Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 21-10298 |
| Comair Limited (In Business Rescue), | Chapter 15 |
| Debtor in a Foreign Proceeding.[1] | |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING**
**AND FOR RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE,**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

---

[1] The Debtor's company registration number is 1967/006783/06. The Debtor's registered business address is 1 Marignane Drive, Bonaero Park, Kempton Park, Gauteng 1619, South Africa.

**Table of Contents**

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     JURISDICTION AND VENUE............................................................................... 3

III.    BACKGROUND....................................................................................................... 4

    A.    Comair's Business.......................................................................................... 4

    B.    Facts Related to Comair's Center of Main Interest.................................... 5

    C.    Comair's Corporate Structure...................................................................... 5

    D.    Events Leading to Comair's Business Rescue............................................ 7

    E.    Assets and Liabilities..................................................................................... 9

    F.    Business Rescue Proceedings in South Africa.......................................... 10

        1.    The Purpose of Business Rescue Proceedings.................................. 10

        2.    Commencing Business Rescue Proceedings .................................... 10

        3.    The Business Rescue Practitioner...................................................... 12

        4.    The Business Rescue Plan and Process............................................. 13

    G.    Procedural History of Comair's Business Rescue.................................... 14

IV.     RELIEF REQUESTED .......................................................................................... 16

V.      BASIS FOR RELIEF ............................................................................................. 16

    A.    Comair is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code ............... 17

    B.    The South African Proceeding is a Foreign Main Proceeding................. 18

        1.    The South African Proceeding is a Foreign Proceeding.................. 18

        2.    The South African Proceeding is a Foreign Main Proceeding......... 20

    C.    Petitioners Qualify as "Foreign Representatives".................................... 21

    D.    The South African Proceeding Meets All Other Requirements for Recognition....... 22

    E.    Relief Pursuant to Section 1521 of the Bankruptcy Code is Appropriate ............... 24

VI.     NO PRIOR REQUEST ......................................................................................... 25

4817-7796-3993

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*,
  470 B.R. 408 (N.D. Tex. 2010) .................................................................. 21, 22

*In re Aerovias Nacionales de Colombia S.A.*,
  303 B.R. 1 (Bankr. S.D.N.Y. 2003) .................................................................. 17

*In re Ashapura Minechem Ltd.*,
  480 B.R. 129 (S.D.N.Y. 2012) ............................................................... 18, 19, 20

*In re B.C.I. Finances Pty Ltd.*,
  583 B.R. 288 (Bankr. S.D.N.Y. 2018) .............................................................. 17

*In re Barnet*,
  737 F.3d 238 (2d Cir. 2013) .............................................................................. 17

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007) .............................................................. 20

*In re Cenargo Int'l, PLC*,
  294 B.R. 571 (Bankr. S.D.N.Y. 2003) .............................................................. 17

*In re Compania Mexicana de Aviacion, S.A. de C.V.*,
  2010 WL 10063842 (Bankr. S.D.N.Y. 2010) ................................................... 22

*In re DBSI, Inc.*,
  409 B.R. 720 (Bankr. D. Del. 2009) ................................................................. 24

*In re Fleming Cos.*,
  499 F.3d 300 (3d Cir. 2007) .............................................................................. 24

*In re OAS S.A.*,
  533 B.R. 83 (Bankr. S.D.N.Y. 2015) .......................................................... 21, 22

*In re Octaviar Admin. Pty Ltd.*,
  511 B.R. 361 (Bankr. S.D.N.Y. 2014) .............................................................. 17

*In re SPhinX, Ltd.*,
  351 B.R. 103 (Bankr. S.D.N.Y. 2006) .............................................................. 21

*In re Suntech Power Holdings Co.*,
  520 B.R. 399 (Bankr. S.D.N.Y. 2014) ................................................................ 1

*In re Vitro S.A.B. de CV*,
  701 F.3d 1031 (5th Cir. 2012) .......................................................................... 21

*In re Woskob*,
  305 F.3d 177 (3d Cir. 2002) .............................................................................. 24

**Statutes**                                                                                   **Page(s)**

11 U.S.C. § 101(23) ........................................................................................... 18

11 U.S.C. § 101(24) ........................................................................................... 22

11 U.S.C. § 109(a) ............................................................................................. 17

11 U.S.C. § 365 .................................................................................................. 24

11 U.S.C. § 507 .................................................................................................. 25

11 U.S.C. § 1501(a)(1)-(5)) ................................................................................. 1

11 U.S.C. § 1502(4) ........................................................................................... 21

11 U.S.C. § 1506 ................................................................................................ 17

11 U.S.C. § 1515(b) ........................................................................................... 23

11 U.S.C. § 1515(c) ........................................................................................... 23

11 U.S.C. § 1517(a) ........................................................................................... 17

11 U.S.C. § 1517(b)(1) ...................................................................................... 21

11 U.S.C. § 1520 ................................................................................................ 24

11 U.S.C. § 1521(a)(7) ...................................................................................... 24

11 U.S.C. § 1522(a) ........................................................................................... 25

**Other Authorities**

*In re Motorcycle Tires & Accessories LLC*,
    Case No. 19-12706 (KBO), Doc. 48 (Bankr. D. Del. 2020) ................................. 25

*In re AllSaints USA Ltd.*,
    Case No. 20-33072) (MI) (Bankr. S.D. Tx. 2020) ............................................. 20

4817-7796-3993

Shaun Collyer and Richard A. Ferguson, the duly appointed joint business rescue practitioners ("**Petitioners**") of Comair Limited (In Business Rescue) ("**Comair**"), a company in business rescue ("**South African Proceeding**") under Chapter 6 of the South African Companies Act No. 71 of 2008 ("**Companies Act**"), by its undersigned United States counsel, Pillsbury Winthrop Shaw Pittman LLP, hereby submit this verified petition (together with the official form petition filed concurrently herewith, the "**Petition**") and respectfully request:

    a.  recognition of the South African Proceeding as a foreign main proceeding under section 1517(b)(1) of title 11 of the United States Code ("**Bankruptcy Code**");

    b.  recognition of Petitioners as Comair's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

    c.  additional relief under section 1521(a)(7) of the Bankruptcy Code.

In further support of this Petition and the requested relief, the Petitioners contemporaneously submit declarations from Shaun Collyer, Nastascha Harduth, and John A. Pintarelli, each executed on February 16, 2021 (collectively, the "**Declarations**").

## I.    <u>PRELIMINARY STATEMENT</u>

1.    The purpose of Chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of: (a) cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; (b) greater legal certainty for trade and investment; (c) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; (d) the protection and maximization of the debtor's assets; and (e) the facilitation of the rescue of financially troubled businesses. *See* 11 U.S.C. § 1501(a)(1)-(5)); *see also In re Suntech Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014).

2.      Comair is one of the largest regional commercial airline companies in Southern Africa.  For more than 70 years, Comair's business model was sound and profitable until recent financial and operational challenges threatened its existence.  On May 5, 2020, Comair commenced the South African Proceeding under Chapter 6 of the Companies Act and Petitioners were appointed to oversee Comair's rehabilitation.

3.      To safeguard Comair's restructuring efforts, and consistent with the purpose of chapter 15 of the Bankruptcy Code Petitioners seek recognition of the South African Proceeding as a foreign main proceeding under sections 1515 and 1517 of the Bankruptcy Code.  As explained below, the Petitioners are advised that the South African Proceeding, this Petition and the Declarations satisfy all the requirements for recognition under chapter 15 of the Bankruptcy Code. *First*, Comair meets section 109(a)'s eligibility requirements because it has property in the United States.  *Second*, the South African Proceeding constitutes a foreign main proceeding within the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code because, among other things, the proceedings were commenced under a South African law relating to the adjustment of debts and Comair is a company registered under the laws of South Africa with its center of main interest and registered office in South Africa.  *Third*, Petitioners are the duly appointed foreign representatives of Comair within the meaning of section 101(24) in that they were appointed as Comair's business rescue practitioners pursuant to a board resolution that was filed with the South African Companies and Intellectual Property Commission ("**Commission**") on May 5, 2020. *Fourth*, Petitioners have complied with all the other requirements for recognition by submitting the Declarations containing the information required by section 1515 of the Bankruptcy Code and Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"). *Fifth*, recognition of the South African Proceeding is not contrary to public policy under

2

section 1506 of the Bankruptcy Code because throughout the business rescue process, stakeholders (including foreign-based creditors) were made aware of the South African Proceeding and the business rescue plan through various forms of notice and have a full opportunity to participate and be heard.

4.      In addition to the relief automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding, pursuant to section 1521(a)(7) of the Bankruptcy Code, Petitioners request additional assistance from the Court to make section 365 of the Bankruptcy Code applicable to this proceeding to allow Comair to assume or reject U.S. state law-governed contracts—options that would complement the relief available under Chapter 6 of the Companies Act.  This relief is necessary as it will help facilitate Comair's business rescue and to the extent a U.S. counterparty may assert, *inter alia*, that it is not bound by the South African Proceeding.

5.      For the foregoing reasons and those set forth below, the Court should recognize the South African Proceeding as a "foreign main proceeding," recognize Petitioners as Comair's foreign representatives, and grant such additional and related relief under chapter 15 of the Bankruptcy Code as requested.

## II.    **<u>JURISDICTION AND VENUE</u>**

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

7.      Venue in this District is proper pursuant to 28 U.S.C. § 1410 because Comair has assets within this District.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and Petitioners consent to the entry of final orders consistent with Article III of the United States Constitution.

9.      The statutory bases for the relief requested are sections 1504, 1507, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

4817-7796-3993

## III.    BACKGROUND

### A.    Comair's Business

10.    Comair is one of the largest regional commercial airline companies in Southern Africa.  *See* Declaration of Shaun Collyer ("**Collyer Decl.**") ¶ 9.  Founded in 1946, Comair operates its airline business under two brands, British Airways, as part of a license agreement with British Airways PLC, and Kulula.com.  *Id.* Before Comair's business rescue, Comair employed more than 2,000 employees, operated a fleet of 27 aircraft, and was well-regarded internationally for its safety record.  *Id.*  Comair's airline business offers scheduled and non-scheduled, full and low-cost airline services within South Africa, sub-Saharan Africa and the Indian Ocean Islands. *Id.*

11.    Comair also operates a non-airline business comprised of four units: hospitality, tourism, training and technology. Collyer Decl. ¶ 10.  The hospitality business, operated by Comair Catering Proprietary Limited, provides health and food products to various South African retailers. *Id.* Services include on-board catering and retail services to Comair's Kulula.com and British Airways branded flights, and all catering and procurement to Comair's SLOW lounges at various South African domestic and international airports.  *Id.*

12.    As part of Comair's initiative to become South Africa's largest digital travel distribution network, Comair's tourism business invested in technology to improve operational efficiency and innovative products to travel agencies and consumers.  *Id.* Comair's training business, which operates under several subsidiaries, provides professional training to pilots, cabin and ground crew employees, and various other personnel. *Id.*

13.    In 2018, Comair's technology business entered into a joint venture with Infinea SA Proprietary Limited to establish a jointly held company called Nacelle Proprietary Limited ("**Nacelle**"). *Id.*  Nacelle provides aviation and related services, such as information technology

4

4817-7796-3993

(IT) operations and support, IT project deployment, process design and software development. On May 22, 2020, Comair acquired the remaining 50% interest in Nacelle, making Nacelle a wholly owned subsidiary of Comair.  *Id*. Comair's acquisition of Nacelle was critical to protect Comair's data and IT systems, and to ensure that Comair can operate its flight management software and commence flight operations despite air travel restrictions.

**B.    Facts Related to Comair's Center of Main Interest**

14.    Comair's center of main interest is in South Africa.  Comair's registered office, headquarters and principal place of business are located at 1 Marignane Drive, Bonaero Park, Kempton Park, Gauteng 1619, South Africa.  *See* Declaration of Nastascha Harduth ("**Harduth Decl**.") ¶ 7.

15.    Comair is organized and operated under the laws of South Africa and is primarily managed and controlled from its principal place of business in South Africa.  Harduth Decl. ¶ 6.

16.    Most of Comair's creditors reside or operate in South Africa, and most disputes commenced by or against Comair are governed by South African law.   Collyer Decl. ¶ 41. Comair's primary assets also are located in South Africa. *Id*.

**C.    Comair's Corporate Structure**

17.    Comair has direct and indirect interests in twenty subsidiaries.  Collyer Decl. ¶ 9. Apart from three subsidiaries registered in either Mozambique or Mauritius, all of Comair's subsidiaries are registered in South Africa. *Id*. The diagram below shows Comair's corporate structure prior to commencement of its business rescue:

5



18.    K2020704995 (South Africa) Proprietary Limited ("**BidCo**") owns approximately 89% of the economic interest in Comair.  *See* Collyer Decl. Ex. D at ¶ 3.   In turn, K2020763937 (South Africa) Proprietary Limited ("**HoldCo**"), a South African limited liability company, holds an 86.22% economic interest (direct and indirect) in Comair, through its 95% ownership interest in BidCo and a direct 1.67% ownership interest in Comair.  Additionally, the following entities indirectly own a greater than 10% economic interest in Comair:

  a.    RSFB Holdings LLC beneficially owns 17.8571% of HoldCo (or 15.396% indirect ownership of Comair);

  b.    HSFB Holdings LLC beneficially owns 17.8571% of HoldCo (or 15.396% indirect ownership of Comair);

  c.    Steplex Holdings Limited beneficially owns 17.8571% of HoldCo (or 15.396% indirect ownership of Comair);

  d.    Mach 1 Limited beneficially owns 17.8571% of HoldCo (or 15.396% indirect ownership of Comair); and

  e.    Luthier Helios Limited beneficially owns 28.5714% of HoldCo (or 24.634% indirect ownership of Comair).[2]

---

[2]    South African law provides for a distinction between (a) beneficial ownership of issued shares, the party that owns the economic interests associated with the shares, and (b) the registered holder of issued shares, or the party that controls the voting rights associated with the shares.  *See* Collyer Decl. Ex. D at ¶ 3.

4817-7796-3993

### D.    Events Leading to Comair's Business Rescue

19.    Several factors led to Comair entering into business rescue.  Between 2015 and 2019, Comair's total debt rose from ZAR2.2 billion ($142 million)[3] to ZAR4.9 billion ($350 million), with total interest and financing costs increasing from ZAR32.5 million ($2.1 million) to ZAR332 million ($23.72 million). Collyer Decl. ¶ 12.  Comair's debt levels escalated due to significant operating costs to renew and maintain Comair's fleet.  *Id*.  Between 2017 and 2020, Comair's fleet ownership costs increased by 65%.  During the same period, Comair's expenses increased by 41.3% while revenues only increased by 25.9%. *Id*.  Between 2018 and 2019, Comair's operating profit (before interest expense) plummeted to ZAR12 million ($857 thousand) from ZAR671 million ($46.72 million).  *Id*.

20.    Adding to Comair's financial woes was the uncertainty surrounding full recovery of a monetary settlement that South African Airways Limited ("**SAA**") owed Comair.  Collyer Decl. ¶ 14.  The settlement arose after Comair sued SAA for anti-competitive conduct, more particularly abuse by SAA of its dominant position, asserting that SAA had paid certain override commissions to travel agents to divert customers away from Comair between 2001 to 2006.  In February 2019, SAA agreed to pay Comair ZAR1.1 billion ($78.1 million) to settle the civil claim for damages.  SAA initially paid ZAR383 million ($27.19 million) on account of the settlement amount, with a payment schedule running until July 2022.  *Id*.  The payment schedule however was breached by SAA upon its commencement of business rescue in December 2019.  *Id*.  SAA's breach of the settlement accelerated the balance of the settlement payment, or ZAR790 million

---

[3] For illustrative purposes, unless a specific date is referenced, the ZAR/USD exchange rates used are the last trading date for the year referenced (*i.e.*, 2015 – ZAR15.4765/US$, 2016 – ZAR13.7386/US$, 2017 – ZAR12.3724/US$, 2018 – ZAR14.3623/US$, 2018 – ZAR14.3623/US$, 2019 – ZAR13.9987/US$ and 2020 – ZAR14.6878/US$).

4817-7796-3993

($56.43 million), becoming due and payable. Comair expects to only recover a small fraction (1-2% of the balance) on account of its claim against SAA pursuant to its business rescue plan. *Id.*

21.     Unfortunately, Comair's financial misfortunes did not end there.  Comair had entered into an agreement with The Boeing Company ("**Boeing**") to purchase eight 737 Max 8 aircraft ("**Max 8**").  Collyer Decl. ¶ 13.  The first Max 8 was delivered in February 2019.  *Id.*  In March 2019, all Max 8 aircraft were grounded worldwide after 346 people died in two separate Max aircraft crashes—the October 29, 2018 Lion Air Flight 610 and the March 10, 2019 Ethiopian Airlines Flight 302—due to a defect in the Max 8's flight control system.  *Id.*  Comair had expended tens of millions of dollars to finance the Max 8 that was delivered and the pre-delivery deposits for the remaining Max 8s on order, in addition to expenses that were specific to the Max 8s for training, operations and maintenance based on Comair's belief that Boeing would faithfully perform its obligations under the purchase agreements.  *Id.*

22.     With effect from March 26, 2020, the President of South Africa imposed a nationwide lock-down and travel ban to curb the spread of COVID-19.  The grounding and unprecedented COVID-19 crises had an enormous prejudicial economic effect on Comair's operations. Collyer Decl. ¶ 15.

23.     In response to its financial problems, Comair took aggressive measures to right-size operations and become more efficient. Collyer Decl. ¶ 16.  Comair cancelled its pending acquisitions, deferred investments, cut jobs and salaries, and reduced operational costs to preserve liquidity and strengthen its balance sheet.  *Id.*  Despite these measures, Comair continued to experience mounting losses and depressed revenues, all while finding it more and more difficult to meet its ongoing financial obligations (especially as Comair had not been able to operate from March 26, 2020 due to the government-imposed lock-down).  *Id.*

8

24.     The prolonged effects of the COVID-19 pandemic and the grounding of aircraft made it difficult for Comair to resume operations and meet its financial obligations. On May 4, 2020, Comair's board of directors passed a resolution to commence the South African Proceeding. Collyer Decl. ¶ 17.

25.     With effect from June 1, 2020, the South African government allowed commercial airlines to resume limited domestic flights for business purposes only, however, the prolonged effects of the COVID-19 pandemic and the grounding of aircraft made it difficult for Comair to resume operations and meet its financial obligations.  Faced with an eroding cash base and an inability to meet such obligations, it became clear to management that Comair was in financial distress and that restructuring under the business rescue process in South Africa was necessary. Collyer Decl. ¶ 18.

### E.     Assets and Liabilities

26.     As of the commencement of the South African Proceeding, Comair had assets totaling ZAR7.79 billion ($420.85 million), with Comair's aircraft and related equipment being its most significant assets.  Collyer Decl. ¶ 19.

27.     As of the same period, Comair had fixed liabilities of at least ZAR6.98 billion ($376.9 million).  Comair's material liabilities consisted of secured debt and lease obligations totaling ZAR4.9 billion ($264.7 million) and trade payables of ZAR1.24 billion ($66.9 million), of which ZAR2.58 billion ($139.5 million) were current liabilities. Collyer Decl. ¶ 20.  Comair also had significant contingent liabilities (in excess of ZAR6 billion ($408.5 million)) under various agreements that had to be resolved through the business rescue proceedings to ensure Comair will emerge from its business rescue as a viable going concern.  *Id.*

9

F.      **Business Rescue Proceedings in South Africa**

1.      *The Purpose of Business Rescue Proceedings*

28.      Business rescue proceedings in South Africa are regulated by Chapter 6 of the Companies Act.  *See* Harduth Decl. ¶ 8, Ex. A.

29.      A business rescue proceeding is aimed at facilitating the rehabilitation of a financially distressed company by providing for: (i) the temporary supervision and management of the company's day-to-day affairs and property by a business rescue practitioner; (ii) a temporary moratorium (stay) on the rights of claimants against the company or in respect of property in its possession; and (iii) the development and implementation, if approved, of a plan to rescue the company by restructuring its business, property, debt, and equity.  *Id.*

2.      *Commencing Business Rescue Proceedings*

30.      A company may be placed in a business rescue in one of two ways: (i) when the board of directors of a company, by majority vote, resolve for the company to voluntarily commence business rescue proceedings and be placed under the supervision of a business rescue practitioner; or (ii) when an affected person[4] makes a formal application to the court for an order commencing business rescue proceedings and placing the company under supervision.  Harduth Decl. ¶ 9.

31.      If a company is placed in a business rescue by its board, a business rescue begins on the date (the "**Commencement Date**") the company files the following with the Commission: (i) Form CoR123.1 (Notice to Begin Business Rescue Proceedings); (ii) a board resolution in which the company resolves to commence business rescue proceedings; (iii) a sworn statement

---

[4]  An affected person is a shareholder, creditor, employee (or their representative) or a registered trade union representing employees of the company. Affected persons have various rights throughout the business rescue process.  Harduth Decl. ¶ 9.

4817-7796-3993

setting out the reasons for the board resolution to start business rescue proceedings; (iv) a certified ID copy of a director undertaking the sworn statement; (v) a letter on the company's letterhead identifying the company's public interest score, nominating the business rescue practitioner, and declaring the nominated business rescue practitioner's independence; and (vi) a letter from the nominated business rescue practitioner declaring his/her capacity to accept the nomination, his/her independence from the company, and that he/she is not disqualified under the terms of the Companies Act.  Harduth Decl. ¶ 10.

32.     Within five business days of the Commencement Date, the company must (i) provide notice to all affected persons of the board resolution and a sworn statement setting out the reasons why the company is financially distressed and detailing the prospects of rescuing the company; and (ii) appoint a business rescue practitioner.  Harduth Decl. ¶ 11. After appointing a business rescue practitioner, the company must file a Form COR123.2 (Notice of the Appointment of Business Rescue Practitioner), together with supporting documents,[5] with the Commission and provide notice of the appointment to all affected persons.  *Id.*

33.     At any time after the adoption of the board resolution and before the adoption of a business rescue plan, an affected person may apply to the South African court ("**High Court**") that has jurisdiction over the matter for an order:

a.   setting aside the resolution on the grounds that: (i) there is no reasonable basis for believing that the company is financially distressed; (ii) there is no reasonable prospect for rescuing the company; or (iii) the company has failed to satisfy the procedural requirements in section 129 of the Companies Act;

---

[5]   The supporting documents include: (i) a board resolution appointing the business rescue practitioner; (ii) a letter on the company's letterhead identifying the company's public interest score, nominating the business rescue practitioner, and declaring the business rescue practitioner's independence; (iii) a letter from the nominated business rescue practitioner declaring his/her capacity to accept the nomination, his/her independence from the company, and that he/she is not disqualified under the terms of the Companies Act; (iv) the business rescue practitioner's identification number; (v) the business rescue practitioner's letter of good standing from a professional body; and (vi) a copy of the business rescue practitioner's license from the Commission. Harduth Decl. ¶ 11, n.4.

4817-7796-3993

     b.  setting aside the appointment of the practitioner on the grounds that the practitioner: (i) does not satisfy the requirements of section 138 of the Companies Act; (ii) is not independent of the company or its management; or (iii) lacks the necessary skills, having regard to the company's circumstances; or

     c.  requiring the practitioner to provide security (in an amount and on terms and conditions that the High Court considers necessary to secure the interests of the company and any affected person).

Harduth Decl. ¶ 13.

### 3.   *The Business Rescue Practitioner*

34.    A business rescue practitioner is an officer of the court and must report to the court in accordance with any applicable rules or orders of the High Court. Harduth Decl. ¶ 15. The business rescue practitioner is required to investigate the company's affairs, business, property and financial situation, and thereafter consider whether there is any reasonable prospect of rescuing the company. The business rescue practitioner is also responsible for developing and implementing a business rescue plan. Harduth Decl. ¶ 16. Besides having the responsibilities, duties and liabilities of a director of the company, the business rescue practitioner has other specific responsibilities under Chapter 6 of the Companies Act. Harduth Decl. ¶¶ 15, 17–19.

35.    Though directors remain directors of the company, their powers and duties are constricted in that the business rescue practitioner has full management control over the company in substitution for the board of the company and its pre-existing management. Harduth Decl. ¶ 20.

36.    Among other powers and duties, the business rescue practitioner may: (i) delegate any power or function to a person who was part of the company's board or pre-existing management; (ii) remove from office any person who forms part of the company's pre-existing management; or (iii) appoint a person as part of the company's management, whether to fill a vacancy or not. Harduth Decl. ¶ 21.

4817-7796-3993

37.    The business rescue practitioner may also suspend entirely, partially or conditionally any obligation in an agreement to which the company is a party at the commencement of the business rescue period, or apply to court to cancel entirely, partially or conditionally any obligation in an agreement to which the company is a party at the commencement of the business rescue period (other than an employment agreement).[6]  Harduth Decl. ¶ 22.

### 4.    *The Business Rescue Plan and Process*

38.    Once a company commences business rescue proceedings, the business rescue practitioner must (i) within 10 business days after being appointed, convene a meeting of the creditors and a meeting of the employees and advise, among other things, the prospects of rescuing the company; and (ii) publish a business rescue plan within twenty-five days after the date on which the business rescue practitioner was appointed or such longer time as may be allowed by the High Court or the holders of a majority of the creditors' voting interests.  Harduth Decl. ¶ 23.

39.    A business rescue plan is a plan developed and, if approved, implemented by the business rescue practitioner, which details the manner in which the practitioner envisages that the company will be rescued.  Harduth Decl. ¶ 24. A business rescue plan must contain all the information reasonably required to facilitate affected persons in deciding whether to accept or reject the plan.  *Id.*

40.    Within ten business days of publishing the business rescue plan, the business rescue practitioner must convene a meeting of the creditors and any other holders of voting interests for the purpose of considering the proposed plan.  Harduth Decl. ¶ 25.  At least five business days before the meeting, the business rescue practitioner must deliver a notice of the meeting to all

---

[6]    Any party to an agreement that has been suspended or cancelled has the right to assert a claim against the company for damages.  Harduth Decl. ¶ 22 n.5.

4817-7796-3993

affected persons, setting out (i) the date, time and place of the meeting; (ii) the agenda of the meeting; and (iii) a summary of the rights of affected persons to participate in and vote at the meeting. *Id.*

41.    A proposed business rescue plan will be approved on a preliminary basis if it is supported by holders of more than 75% of the creditors' voting interests that were voted and when the votes in support of the proposed plan included at least 50% of the independent creditors' voting interests, if any, that were voted. Harduth Decl. ¶ 26.    If the business rescue plan does not alter the rights of equity security holders, then approval of the plan by creditors constitutes the final adoption of the plan (subject to satisfaction of any conditions on which that plan is contingent). *Id.*    If, however, the business rescue plan alters the rights of equity security holders, then the practitioner must hold a meeting of holders of the class(es) of securities whose rights would be altered by the plan to allow them to vote on the plan.  *Id.* The business rescue plan will have been fully adopted if a majority of the equity security voting rights that were exercised support adoption of the plan. *Id.*

42.    A business rescue plan that has been adopted is binding on all creditors and equity security holders whether or not they voted in favor of adoption of the plan or were present at the meeting.  Harduth Decl. ¶ 27.

### G.    Procedural History of Comair's Business Rescue

43.    On May 4, 2020, the board of directors of Comair adopted a board resolution ("**Board Resolution**") to commence business rescue proceedings and appoint Petitioners as joint business rescue practitioners under Chapter 6 of the Companies Act.  *See* Collyer Decl. ¶ 17, Ex. A; Harduth Decl. ¶ 29.

44.    On May 5, 2020, the Board Resolution and the Notice of Beginning of Business Rescue Proceedings (Form CoR123.1) were filed with the Commission commencing the South

14

African Proceeding.  In addition, on that same day, Notice of the Appointment of the Business

Rescue Practitioners (Form CoR123.2), together with supporting documents, were filed with the

Commission.  *See* Collyer Decl. ¶ 2, Exs. A, B; Harduth Decl. ¶ 30.

45.     On May 7, 2020, Petitioners caused notice of the commencement of the South

African Proceeding and the appointment of Petitioners to be provided to creditors, shareholders,

employee representatives and other affected persons.  Collyer Decl. ¶ 23.

46.     Thereafter, Petitioners held meetings with creditors and employee representatives,

and consulted with Comair's management, shareholders, creditor's committee and employee

representatives committee.  Collyer Decl. ¶ 24.

47.     After extensive discussions and negotiations, on September 2, 2020, Petitioners

published a business rescue plan ("**Plan**").  Collyer Decl. ¶ 27.

48.     On September 18, 2020, the Plan was approved by a majority (93%) of Comair's

creditors.  Collyer Decl. ¶ 29.  The Plan contemplates funding of up to ZAR1.2 billion ($80

million), including ZAR600 million ($40 million) of new debt, ZAR100 million ($6.67 million)

in pre-payments from certain trade counterparties, and ZAR500 million ($33.33 million) of new

equity capital provided by investors.  Collyer Decl. ¶ 28.  As a condition precedent to the new

equity investment, Comair was required to negotiate a collective agreement with its trade unions

to reduce its workforce by 400 or roughly 20%.  *Id.*  The Plan also contemplates a reduction in

Comair's fleet from 27 (prior to the business rescue commencement date) to 25 aircraft (15 owned

and 10 leased).  *Id.*

49.     On December 1, 2020, Comair resumed flight operations under its two airline

brands with an operating fleet of 15 aircraft.  Collyer Decl. ¶ 30.

4817-7796-3993

50.     Since approval of the Plan, Petitioners have provided affected persons with notice of corrections and revisions to the Plan, as well as monthly reports on the progress of the South African Proceeding. Collyer Decl. ¶ 31.  The Petitioners are pursuing amendments to the Plan to ensure Comair's feasibility as a going concern upon its emergence from business rescue.  *Id*.  If, as a result of the filing and acceptance of claims and the contemplated Plan amendments, the Plan materially impacts the rights of a class of creditors, the Petitioners will re-solicit votes on the amended Plan in accordance with the terms of the Plan. Harduth Decl. ¶ 27.

51.     On December 21, 2020 and January 4, 2021, the company provided notice to all creditors who believe they have claims that are not reflected in Annexure B to the Plan that they had until February 1, 2021 to submit their claims.  Collyer Decl. ¶ 32.  Section 8.3 of the Plan indicates that the Plan will not be deemed to be substantially implemented until, among other things, all disputed creditor claims are in the process of being resolved and a mechanism for creditor distributions has been established.  *Id*.

## IV.     RELIEF REQUESTED

52.     Petitioners seek entry of an order, substantially in the form attached hereto as Exhibit 1, granting:

    a.  recognition of the South African Proceeding as a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code;

    b.  recognition of Petitioners as Comair's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

    c.  additional relief under section 1521(a)(7) of the Bankruptcy Code.

## V.     BASIS FOR RELIEF

53.     Section 1517 of the Bankruptcy Code mandates recognition of a "foreign proceeding" if it appears that recognition will not be manifestly contrary to U.S. public policy and: "(1) such foreign proceeding . . . is a foreign main proceeding or foreign non-main proceeding

4817-7796-3993

within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a); *see also* 11 U.S.C. § 1506. Each of these requirements is met here and granting the requested relief will significantly aid Petitioners' administration of Comair's assets and liabilities and ensure fair and equitable treatment of Comair's creditors and shareholders.

### A.    Comair is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code

54.    Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor."  11 U.S.C. § 109(a).  Section 109(a) has been applied to cases commenced under chapter 15 and is usually satisfied if the foreign debtor has nominal amounts of property in the United States.  *See In re Barnet*, 737 F.3d 238, 248 (2d Cir. 2013); *In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 294 (Bankr. S.D.N.Y. 2018) ("retainer account constitutes property of the [d]ebtors that satisfies the [s]ection 109(a)"); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) (section 109(a) is satisfied even if the debtor manufactures eligibility by depositing a $10,000 retainer in a client trust account); *In re Cenargo Int'l, PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003) (debtor was eligible under chapter 15 since it had joint bank accounts and pledged stock in the United States); *In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 8-9 (Bankr. S.D.N.Y. 2003) (minimal amount of property in the United States is enough to establish section 109(a) eligibility).

55.    Comair is an eligible debtor under section 109(a) because it has property in the United States in the form of a retainer with Pillsbury Winthrop Shaw Pittman LLP.  These funds are held in J.P. Morgan Chase account in New York. In additional, Comair is a party to contracts governed by the laws of New York, Washington and Delaware.

17

**B.**      **The South African Proceeding is a Foreign Main Proceeding**

*1.*      *The South African Proceeding is a Foreign Proceeding*

56.      The Bankruptcy Code defines "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by a foreign
> court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

57.      A proceeding is a foreign proceeding if the foreign representative establishes:

> [the existence of] a proceeding; (ii) that [the proceeding] is either
> judicial or administrative; (iii) that [the proceeding] is collective in
> nature; (iv) that [the proceeding] is in a foreign country; (v) that [the
> proceeding] is authorized or conducted under a law related to
> insolvency or the adjustment of debts; (vi) [that] the debtor's assets
> and affairs are subject to the control or supervision of a foreign
> court; and (vii) that [the proceeding] is for the purpose of
> reorganization or liquidation.

*In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (footnote omitted).  The South

African Proceeding satisfies the foregoing standard.

58.      *First*, the South African Proceeding was commenced in respect of Comair on

May 5, 2020 when the Board Resolution and the Notice of Beginning of Business Rescue

Proceedings (Form CoR123.1) were filed with the Commission.  Harduth Decl. ¶¶ 10, 30.

59.      *Second*, the South African Proceeding is a judicial proceeding in that: (i) it is under

the supervision of the High Court; (ii) the High Court may consider objections asserted by affected

persons in respect of the commencement of Comair's business rescue and the appointment of the

business rescue practitioners; and (iii) the High Court may consider requests by affected persons

for permission to commence or continue legal proceedings against Comair or to require the

business rescue practitioners to provide security.  Moreover, under Chapter 6 of the Companies

Act, each business rescue practitioner "is an officer of the court and must report to the court in

18

accordance with any applicable rules of, or orders made by the court." Companies Act § 140(3)(a). Harduth Decl. ¶¶ 13, 15.

60.     **Third**, the South African Proceeding is collective in nature in that the proceedings relate to the adjustment of Comair's debts and allowed creditors and shareholders to vote on the Plan at the statutory meeting of creditors.  Harduth Decl. ¶¶ 26, 32.

61.     **Fourth**, the South African Proceeding is foreign in that it was commenced and is pending in South Africa.

62.     **Fifth**, the South African Proceeding is authorized and is being conducted under Chapter 6 of the Companies Act, which is a South African law related to the adjustment of debts. Harduth Decl. ¶ 8.

63.     **Sixth**, the High Court has supervision over the South African Proceeding, assets and affairs.  Specifically, the High Court monitors Comair's affairs through reports submitted by Petitioners, as well as applications made by creditors or affected parties.  If issues arise, the High Court may influence or overturn the course of the South African Proceeding (including assets and affairs) by placing it in liquidation, granting a creditor or affected person relief from the moratorium to commence or continue litigation against Comair or its property, or setting aside Petitioners' appointment in place of an alternate business rescue practitioner(s).  That the High Court does not control Comair's day-to-day operations is not decisive.  As explained by the court in *In re Ashapura Minechem Ltd.*:

> Supervision or control of the company's affairs is not a demanding standard. The foreign court need not control the day-to-day operations of the debtor. It is sufficient, for instance, that the body monitor compliance with the repayment plan negotiated between the debtor and creditors. . . .  The fact that actions in a foreign court related to the proceeding are typically initiated by interested parties and that liquidators proceed with most of their duties without court involvement [does] not undermine the court's supervisory role.

*Ashapura*, 480 B.R. 129 at 138 (quotation marks and alterations omitted; footnotes omitted). In short, the sixth factor is satisfied because the High Court has supervision over the South African Proceeding and the conduct of Comair's affairs. *See generally In re AllSaints USA Ltd.*, Case No. 20-33072) (MI) (Bankr. S.D. Tx. 2020) (recognition of English company voluntary administration ("**CVA**") proceeding).

64.    ***Seventh***, the objective of the South African Proceeding is reorganization. Comair's business rescue under Chapter 6 of the Companies Act provides for Petitioners to propose and implement a plan that: (a) restructures Comair's debts and operations; (b) allows Comair to obtain post-commencement financing to cover expenses associated with fleet storage, maintenance, insurance and other operating expenses; (c) allows Comair to retain most of its employees (thereby saving jobs) and restructure its fleet; (d) allows Comair to resume operations; and (e) provides distributions to creditors and other shareholders.

65.    For these reasons, the South African Proceeding satisfies the elements of a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

## 2.    *The South African Proceeding is a Foreign Main Proceeding*

66.    A foreign main proceeding "means a foreign proceeding pending in the country where the debtor has the center of its main interests" ("**COMI**"). 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1). COMI is undefined under the Bankruptcy Code, but the term is understood to equate to "a debtor's principal place of business." *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129 (Bankr. S.D.N.Y. 2007). Other relevant factors, include:

> (i) the location of the debtor's headquarters; (ii) the location of persons or entities that actually manage the debtor (could be the headquarters of a holding company); (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by

20

the case; and (v) jurisdiction whose law would apply to most
disputes.

*In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).

67.    All factors support a finding that South Africa is Comair's COMI:

    a.    Comair's headquarters are located at 1 Marignane Drive, Bonaero Park, Kempton Park, Gauteng 1619, South Africa.

    b.    Comair is primarily managed and controlled from its principal place of business located at 1 Marignane Drive, Bonaero Park, Kempton Park, Gauteng 1619, South Africa. Further, the Petitioners who are residents of South Africa have been managing Comair's business affairs since their appointment in May 2020.

    c.    Comair's primary assets are located in South Africa.

    d.    Most of Comair's creditors reside in or are located in South Africa.

    e.    Most disputes by or against Comair are governed by South African law.

    f.    Comair is organized and operated under the laws of South Africa.

68.    Because South Africa is Comair's COMI, the South African Proceeding should be recognized as a foreign main proceeding.

**C.    Petitioners Qualify as "Foreign Representatives"**

69.    A foreign representative is "a person or body, including a person or body . . . appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).  The governing body of an entity may authorize a person to act as that entity's foreign representative in a chapter 15 proceeding. *See In re Vitro, S.A.B. de C.V.*, 470 B.R. 408, 411-12 (N.D. Tex. 2012), *aff'd sub nom.*, *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1047 (5th Cir. 2012) (recognizing that the board of directors of a corporation could authorize a person to act as the corporation's foreign representative in a chapter 15 proceeding); *In re OAS S.A.*, 533 B.R. 83, 98 (Bankr. S.D.N.Y. 2015) (same); *In re Compania Mexicana de Aviacion, S.A. de C.V.*, 2010 WL 10063842 (Bankr. S.D.N.Y. 2010) (same).

4817-7796-3993

70.      Section 138 of the Companies Act provides that a person may only be a business rescue practitioner if the person: (i) is a member in good standing of a legal, accounting or business management profession accredited by the Commission, (ii) is not subject to an order of probation, (iii) would not be disqualified from acting as a director of a company, (iv) has no relationship with the company such that a reasonable third-party would conclude that the integrity, impartiality or objectivity of that person is compromised, (v) is not related to anyone who has a relationship with the company of the kind described in point (iv) of this paragraph; and (vi) has been licensed by the Commission as a business rescue practitioner.  Harduth Decl. ¶ 14; *see also* Companies Act § 138. In practice, the business rescue practitioner is an insolvency and restructuring professional who will, together with the company's legal advisors, oversee the business rescue.

71.      The Board Resolution appointed Petitioners as Comair's business rescue practitioners, and the Notice of Appointment as Business Rescue Practitioners (Form CoR123.2) was filed with the Commission.  *See* Collyer Decl. ¶ 2, Ex. A.  Section 101(24) requires no further authorization.  *See Vitro*, 470 B.R. at 411 ("a foreign representative who was appointed by a corporation engaged in a foreign bankruptcy proceeding" is "authorized in a foreign proceeding" within the meaning of section 101(24)); *OAS S.A.*, 533 B.R. at 95 ("[T]he Bankruptcy Code does not require the judicial authorization or appointment of the foreign representative [by the foreign court overseeing the main proceeding]").

**D.      The South African Proceeding Meets All Other Requirements for Recognition**

72.      Section 1515 of the Bankruptcy Code provides that a petition for recognition must be accompanied by any one of the following:

> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

22

> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>
> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b). A petition for recognition also must be "accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representatives." 11 U.S.C. § 1515(c).

73.    In support of this Petition and in compliance with section 1515 of the Bankruptcy Code, Petitioners have submitted the Declaration of Shaun Collyer, which, among other things, attaches the Board Resolution, the Notice of Beginning of Business Rescue Proceedings (Form CoR123.1) and the Notice of Appointment as Business Rescue Practitioners (Form CoR123.2) that were filed with the Commission and that commenced the South African Proceeding. *See* Collyer Decl. ¶ 2, Exs. A–C. The Collyer Declaration also includes, as <u>Exhibit D</u>, a statement pursuant to Bankruptcy Rules 1007(a)(4) and 7007.1, and section 1515(c) of the Bankruptcy Code, that (i) identifies all foreign proceedings with respect to Comair, (ii) includes the disclosures required by Bankruptcy Rule 7007.1, (iii) includes a statement indicating that there are no other persons or entities known to Petitioners that are authorized to administer foreign proceedings with respect to Comair, (iv) lists all parties to litigation with Comair in the United States, and (v) contains a description of Comair's assets in the United States. *See* Collyer Decl. Ex. D at ¶¶ 3–8. Additionally, all documents supporting the Petition are in English in compliance with section 1515(d) of the Bankruptcy Code.

74.    For all of these reasons, the Petition satisfies the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007, and the Court should find that the requirements for recognition of the South African Proceeding as a foreign main proceeding have been satisfied.

4817-7796-3993

### E.   Relief Pursuant to Section 1521 of the Bankruptcy Code is Appropriate

75.     In addition to the relief that is automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding,[7] Petitioners request additional relief pursuant to section 1521 of the Bankruptcy Code to protect Comair's assets and its creditors' interests.  Section 1521 of the Bankruptcy Code provides, in part, that the court may grant a foreign representative "any appropriate relief," including "any additional relief that may be available to a trustee," subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of chapter 15 and to protect the debtor's assets and creditors' interests.   11 U.S.C. § 1521(a)(7).

76.     Pursuant to section 1521(a)(7) of the Bankruptcy Code, Petitioners request that the Court extend the protections afforded by section 365 of the Bankruptcy Code.  Section 365 is a fundamental provision that enables a debtor to preserve valuable commercial relationships, including preventing counterparties from attempting to terminate their contracts or halt performance as a result of the debtor's insolvency.  *See In re Woskob*, 305 F.3d 177, 184-85 (3d Cir. 2002) (section 365 invalidates provisions of law or contract which specify that a bankruptcy filing *per se* will terminate or modify the contract); *In re DBSI, Inc.*, 409 B.R. 720, 734 (Bankr. D. Del. 2009).  It also enables a debtor to assume contracts that are beneficial and valuable, but reject those that are burdensome.  *See In re Fleming Cos.*, 499 F.3d 300, 304 (3d Cir. 2007) (section 365 allows a trustee to "to maximize the value of the debtor's estate by assuming executory contracts . . . that benefit the estate and rejecting those that do not").

77.     Application of section 365 is necessary to protect against the disruption of business operations and interference with reorganization efforts that would result from a contract

---

[7]     Upon recognition of the South African Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right.  *See* 11 U.S.C. § 1520.

24

counterparty's attempt to exercise remedies or cease performance under an agreement with Comair. It also would give Comair the ability to assume or reject contracts and leases—options that would complement the relief available under Chapter 6 of the Companies Act and that may be necessary if any U.S. counterparty asserts that it is not bound by Comair's business rescue proceeding. Courts have allowed debtors in other chapter 15 cases to reject or assume contracts under section 365. *See, e.g.*, *In re Motorcycle Tires & Accessories LLC*, Case No. 19-12706 (KBO), Doc. 48 (Bankr. D. Del. 2020) (authorizing rejection of leases under section 365).

78. Moreover, the rights and interests of the creditors and other shareholders are sufficiently protected. *See* 11 U.S.C. § 1522(a) (limiting the court's ability to grant relief under section 1521 "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected"). The South African Proceeding provides a forum for all creditors seeking to satisfy their claims against Comair in a fair and efficient manner. The Companies Act provides for a priority scheme that is substantially similar to the Bankruptcy Code's priority scheme. *Compare* Companies Act §§ 135 and 144, *with* 11 U.S.C. § 507. Creditors and other interested entities have been notified of the commencement of Comair's business rescue, various milestones in the South African Proceeding, and of their right to submit claims against Comair. *See* Collyer Decl. ¶¶ 23–28, 31. Further, to the extent that a creditor's claim has been accepted, it is entitled to a *pari passu* distribution with other similarly situated creditors regardless of whether the creditor is foreign or domestic. Harduth Decl. ¶ 36.

## VI.   NO PRIOR REQUEST

79. No prior request for the relief sought in this Petition has been made to this or any other court.

25

WHEREFORE, for the foregoing reasons, Petitioners respectfully request entry of an order, substantially in the form attached hereto as <u>Exhibit 1</u>, (i) recognizing the South African Proceeding as a "foreign main proceeding," (ii) recognizing Petitioners as Comair's foreign representatives, (iii) granting additional relief under section 1521 and making section 365 applicable to this chapter 15 case, and (iv) granting such other and further relief as the Court deems just and proper.

New York, New York
Dated:  February 16, 2021                     Respectfully submitted,

                                              PILLSBURY WINTHROP SHAW PITTMAN LLP

                                              */s/ John A. Pintarelli*_____
                                              John A. Pintarelli
                                              Dania Slim
                                              Rahman Connelly
                                              Kwame O. Akuffo
                                              31 West 52nd Street
                                              New York, NY 10019-6131
                                              Telephone: 212-858-1000
                                              Facsimile: 212-858-1500

                                              *Attorneys for Petitioners Shaun Collyer and*
                                              *Richard A. Ferguson, as Business Rescue*
                                              *Practitioners of Comair Limited*

26

4817-7796-3993

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, Richard A. Ferguson declares as follows:

My colleague Shaun Collyer and I are duly appointed joint business rescue practitioners (the "**Petitioners**") of Comair Limited (In Business Rescue) ("**Comair**"), a company in business rescue proceedings in South Africa (the "**South African Proceeding**") by way of a resolution adopted on May 4, 2020 by the board of directors of Comair to commence business rescue proceedings and appoint the Petitioners as joint business rescue practitioners under Chapter 6 of the South African Companies Act No. 71 of 2008 and the Notice of Beginning of Business Rescue Proceedings (Form CoR123.1) having been filed with the South African Companies and Intellectual Property Commission on May 5, 2020.  I have full authority to verify the foregoing Verified Petition for Order Recognizing Foreign Main Proceeding and Granting Additional Relief Under Chapter 15 of the Bankruptcy Code and Memorandum of Law in Support Thereof (the "**Verified Petition**"). I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of February 2021 in Cape Town, South Africa.


/s/  Richard A. Ferguson_____
Richard A. Ferguson
Joint Business Rescue Practitioner for Comair
Limited (In Business Rescue)

4817-7796-3993