**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NOT FOR PUBLICATION**

```
-------------------------------------------------------- x
In re:                                             :
                                                   :        Chapter 15
                                                   :
Comair Limited (In Business Rescue),               :
                                                   :        Case No. 21-10298(JLG)
                                                   :
Debtor in a Foreign Proceeding.                    :
-------------------------------------------------------- x
```

### MEMORANDUM DECISION AND ORDER GRANTING THE FOREIGN REPRESENTATIVE'S MOTION FOR AN ORDER PERMITTING THE FOREIGN REPRESENTATIVE TO CONDUCT DISCOVERY PURSUANT TO 11 U.S.C. § 1521 AND FED. R. BANKR. P. 2004

<u>**A P P E A R A N C E S**</u>:

PILLSBURY WINTHROP SHAW PITTMAN LLP
*Attorneys for Foreign Representatives of Comair Limited (in Business Rescue)*
31 West 52nd Street
New York, NY 10019-6131
<u>By</u>:    John A. Pintarelli, Esq.
         Anne C. Lefever, Esq.
         Dania Slim, Esq.

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
*Attorneys for The Boeing Company*
601 Lexington Avenue
New York, New York 10022
<u>By</u>:    David R. Seligman, Esq.
         Susan D. Golden, Esq.
         Michael B. Slade, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[1]

Before the Court is the motion (the "Motion")[2] of Richard A. Ferguson, in his capacity as

the Business Rescue Practitioner and foreign representative (the "Foreign Representative") of

Comair Limited (the "Debtor"[3] or "Comair") for the entry of an order permitting him to conduct

discovery of The Boeing Company ("Boeing") pursuant to section 1521 of the Bankruptcy Code

and Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure. Boeing opposes the

Motion (the "Response").[4] The Foreign Representative filed a reply to the Response (the

"Reply").[5]

For the reasons set forth below, the Court finds that the Foreign Representative has

established grounds under section 1521(a)(4) to conduct discovery of Boeing relating to causes

of action that Comair may hold against Boeing and the extent of Comair's potential monetary

---

[1]    Unless otherwise specified, citations to "[ECF No. __]" refer to documents filed on the electronic docket of the instant proceeding (Case No. 21-10298).

[2]    *See Motion for an Order Permitting the Foreign Representatives to Conduct Discovery Pursuant to 11 U.S.C. § 1521 and Fed. R. Bankr. P. 2004* [ECF No 13-1]. In support of the Motion, the Foreign Representative relied on the *Declaration of Shaun Collyer in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding* [ECF No. 3] ("Collyer Decl.") and the *Declaration of Natascha Harduth in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding* [ECF No. 4] ("Harduth Decl.").

[3]    Under chapter 15, the term "debtor" "means an entity that is the subject of a foreign proceeding." 11 U.S.C. § 1502(1).

[4]    *See Objection of The Boeing Company to Motion for an Order Permitting the Foreign Representative to Conduct Discovery Pursuant to Section 1521 of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure* [ECF No. 21].

[5]    *See Reply in Further Support of Motion for an Order Permitting the Foreign Representatives to Conduct Discovery Pursuant to 11 U.S.C. § 1521 and Fed. R. Bankr. P.* 2004 [ECF No. 24]. In support of the Reply, the Foreign Representative submitted *the Declaration of Eric Levenstein in Support of the Motion for an Order Permitting the Foreign Representative to Conduct Discovery Pursuant to 11 U.S.C. § 1521 and Fed. R. Bankr. P. 2004* [ECF No. 24-1] (the "Levenstein Declaration"). The Court conducted a telephonic hearing on the Motion. During the hearing, counsel for Boeing raised issues with respect to the admission of the Levenstein Declaration into the evidentiary record of the hearing.  After discussion on the record among the Court and counsel, the Foreign Representative elected to go forward with the hearing without the Levenstein Declaration.

recovery from Boeing. The Court directs the parties to meet and confer in an effort to resolve

their disputes regarding the breadth of the Foreign Representative's Request for Production

(defined below). To the extent that they are unable to resolve their disputes, they are directed to

contact Chambers to schedule a conference in accordance with Local Bankruptcy Rule 7007-1

and the Court's Chambers' Rules governing discovery disputes.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Referral of Cases to Bankruptcy Judges*, dated January 31, 2012

(Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

### Background

### The South African Business Rescue Proceeding

Comair is one of the largest regional commercial airline companies in southern Africa.

*See* Collyer Decl. ¶ 9. It operates its airline business under two brands, British Airways, as part

of a license agreement with British Airways PLC, and Kulula.com. *Id.* In or about May 2020,

Comair employed more than 2,000 employees and operated a fleet of 27 aircraft. *Id.* Comair's

airline business offers scheduled and non-scheduled, full, and low-cost airline services within

southern Africa. *Id.*

During the period of 2015 through 2019, Comair experienced significant financial

challenges as, among other things, its total debt rose approximately $200 million to $350 million,

as it sought to renew its aircraft fleet and incurred related capital expenditures; its financing

expenses and operating costs grew at a rate that outpaced revenue growth; and between 2018 and

2019, its operating profits (before interest expense) fell by nearly $46 million to less than $1

million. *Id.* ¶ 12. To make matters worse, effective March 26, 2020, the President of South

Africa imposed a nationwide lock-down and travel ban to curb the spread of COVID-19. *Id*. ¶ 15. The grounding of aircraft and unprecedented COVID-19 crisis severely adversely impacted Comair's operations and further compromised its already unstable financial situation. *Id*. In response to the travel ban, Comair took aggressive measures to rightsize operations and become more efficient. *Id*. ¶ 16. To preserve liquidity and strengthen its balance sheet, Comair cancelled its pending acquisitions, deferred investments, cut jobs and salaries, and reduced operational costs. *Id*. Still, Comair continued to experience mounting losses and depressed revenues and could not meet its ongoing financial obligations. *Id*. ¶ 17.

On May 4, 2020, Comair's board of directors adopted a board resolution to commence business rescue proceedings and appoint Richard Ferguson and Shaun Collyer as joint business rescue practitioners (the "Business Rescue Practitioners") under Chapter 6 of the South African Companies Act 71 of 2008 (the "Companies Act").[6] Collyer Decl. ¶ 17, Ex. A (the "Board Resolution"). On May 5, 2020, Comair commenced its business rescue proceeding (the "South African Proceeding") by filing the Board Resolution and the Notice of Beginning of Business Rescue Proceedings (Form CoR 123.1) with the Companies and Intellectual Property Commission of the Republic of South Africa ("Commission"). *Id*. ¶ 2. That same day, it filed its Notice of Appointment of Business Rescue Practitioners (Form CoR123.2), together with supporting documents, with the Commission. *Id*. On May 7, 2020, Messrs. Ferguson and Collyer caused notice of the commencement of the South African Proceeding and of their appointment as Business Rescue Practitioners to be provided to creditors, shareholders, employee representatives and other affected persons. *Id.* ¶ 23.

---

[6]    A copy of the Companies Act is annexed as Exhibit A to the Harduth Declaration.

A business rescue proceeding facilitates the rehabilitation of a financially distressed company by providing for, among other things, "the development and implementation, if approved, of a business rescue plan to rescue the company by restructuring its business, property, debt, affairs, and equity in a manner that maximizes the likelihood of the company continuing into existence on a solvent basis or, if that is not possible, results in a better return for the company's creditors or shareholders than would result from the immediate liquidation of the company." Harduth Decl. ¶ 8 (quoting Companies Act § 128(1)(b)). Comair commenced the South African Proceeding in an effort to save the company from liquidation. Collyer Decl. ¶ 22. Its key objectives included "[(i)] discharging certain pre-filing liabilities, [(ii)] cutting the size of [its] aircraft fleet and thereby reducing operating expenses on a go-forward basis, [(iii)] renegotiating and/or refinancing certain aircraft finance and lease agreements, [(iv)] identifying unprofitable business segments and selling or otherwise disposing of related assets, [(v)] raising new debt and equity financing to fund the company following emergence, and [(vi)] providing a meaningful distribution to creditors." *Id.*

On September 2, 2020, after discussions and negotiations with Comair's management, shareholders, creditors' committee and an employee representatives committee, the Business Rescue Practitioners published a business rescue plan (the "Rescue Plan").[7] *Id.* ¶¶ 24, 27. On September 18, 2020, a majority (93%) of Comair's creditors approved the Rescue Plan. *Id.* ¶ 29. The Rescue Plan contemplates funding of up to ZAR1.2 billion ($80 million), including ZAR600 million ($40 million) of new debt, ZAR100 million ($6.67 million) in pre-payments from certain trade counterparties, and ZAR500 million ($33.33 million) of new equity capital provided by investors. *Id.* ¶ 28. As a condition precedent to the new equity investment, Comair was required

---

[7]   A copy of the Rescue Plan is annexed as Exhibit 2 to the Response.

to negotiate a collective agreement with its trade unions to reduce its workforce by 400 or roughly 20%. *Id.* The Rescue Plan also contemplates a reduction in Comair's fleet from 27 to 25 aircraft (15 owned and 10 leased). *Id.*

The Rescue Plan, as approved, includes a procedure for the Business Rescue Practitioners to amend the Rescue Plan. *See* Rescue Plan § 13. In part, it states:

> The [Business Rescue Practitioners] shall have the ability, in their sole and absolute discretion, to amend, modify or vary any provision of this Business Rescue Plan, provided that (i) any amendment will not be materially prejudicial to any of the Affected Persons; [and] (ii) at all times the [Business Rescue Practitioners] act reasonably[.]

*Id.* § 13.2.  The plan further specifies that any amendment will take effect 24 hours after the Business Rescue Practitioners provide written notice of the amendment to all "Affected Persons," defined as Comair's shareholders, creditors, and employees.  *Id.* §§ 13.3, 1.3.3; *see also id.* § 13.5 (requiring approval of amendment by those "materially prejudic[ed]" by the amendment). In addition, the Rescue Plan requires that the Business Rescue Practitioners "provide regular monthly updates relating to the Business Rescue Proceedings and the Implementation of the [] Rescue Plan . . . in accordance with section 132(3)(a) of the Companies Act" as long as the Rescue Plan has not concluded (the "Status Updates"). *See id.* § 4.4.[8] The Business Rescue Practitioners have issued Status Updates. *See, e.g.*, July 8, 2021 Status Update (defined and discussed below).[9]

---

[8]    Section 132(3)(a) of the Companies Act states:

> If a company's business rescue proceedings have not ended within three months after the start of those proceedings, or such longer time as the court, on application by the practitioner, may allow, the practitioner must— (a) prepare a report on the progress of the business rescue proceedings, and update it at the end of each subsequent month until the end of those proceedings[.]

Companies Act § 132(3)(a).

[9]    A copy of the July 8, 2021 Status Update is annexed as Exhibit 4 to the Response.

The Business Rescue Practitioners' implementation of the Rescue Plan has been

complicated by developments in the COVID-19 pandemic. Since the Business Rescue

Practitioners filed the Verified Petition (defined below) in this Court on February 16, 2021, the

South African Government imposed new restrictions to curb the country's COVID-19 infection

rate.  Among other things, the South African government forbid leisure travel to the Gauteng

Province—the location of Johannesburg, South Africa's most populous city. *See* July 8, 2021

Status Update ¶ 5. These restrictions forced Comair to suspend all flight operations as of July 5,

2021 and place their aircraft into short term storage. *Id*. Grounding its fleet prevented Comair

from generating any significant revenue, brought Comair further financial and operational

uncertainty and, thus, upended the execution of the Rescue Plan. *See id*. Indeed, the Business

Rescue Practitioners reported that as a consequence of the additional COVID-19 travel

restrictions, the company sought additional funding from the Comair Rescue Consortium, the

company's investors' consortium, "to provide the funding necessary to ensure the Company's

ability to meet its financial obligations in the foreseeable future." *Id*. ¶ 5.4. The Foreign

Representative advises that the Rescue Plan may need to be amended going forward as a result of

the Business Rescue Practitioners' continued analysis into whether Comair can profitably

reemerge from the South African Proceeding, or, instead, whether the company will face

liquidation.  Reply ¶ 31; *see also* Collyer Decl. ¶ 29 ("The Business Rescue Practitioners are

negotiating amendments to the [Rescue] Plan to ensure Comair's feasibility as a going concern

upon its emergence from business rescue.").

**Comair's Agreement To**
**Acquire Aircraft From Boeing**

Comair and Boeing entered into an Aircraft General Terms Agreement, dated January 29,

2010, pursuant to which Boeing agreed to manufacture, and Comair agreed to purchase, Boeing

aircraft. Motion ¶ 12. On September 18, 2013, Boeing and Comair entered into Purchase

Agreement Number PA-04055 (the "Purchase Agreement"), together with fifteen letter

agreements, for the sale, manufacture, and delivery of eight 737 MAX 8 aircraft (the "737 MAX

8 Aircraft" or the "Aircraft"). *Id*. ¶ 13. Under the Purchase Agreement, Comair agreed to make a

series of pre-delivery purchase payments and then pay the balance of each Aircraft's purchase

price at delivery. Reply ¶ 11. In February 2019, Boeing delivered—and was paid for—the first

Aircraft ("Aircraft #1"). *See* Collyer Decl. ¶ 13; Reply ¶¶ 10-11; Response ¶ 6. The remaining

Aircraft were scheduled to be delivered between March 2019 and March 2024. Motion ¶ 14. In

particular, the second and third Aircraft were scheduled for delivery in March 2019 and February

2020, respectively. Response ¶ 7. However, that re-fleeting plan was stalled and ultimately

abandoned in the wake of the fatal 737 MAX 8 crashes of Lion Air Flight 610 in Indonesia and

Ethiopian Airlines Flight 302 on October 29, 2018 and March 10, 2019, respectively, and the

subsequent grounding of all 737 MAX 8 aircraft worldwide. *See* Collyer Decl. ¶ 13; Motion ¶

15.

**Comair Purports To Terminate**
**The Purchase Agreement**

On February 12, 2020, Comair purported to cancel and terminate the Purchase

Agreement for all eight Aircraft. Response ¶ 8. On February 17, 2020, Boeing responded to

Comair, disputing the purported cancellation but affirming its commitment to working with

Comair through the grounding and return to service of the 737 MAX 8 aircraft. *Id.* On March 27,

2020, Comair and one of Comair's lenders entered into an agreement with Boeing to facilitate

financing of Comair's pre-delivery payments for the second and third Aircraft. *Id.*

On February 16, 2021, South African counsel for the Business Rescue Practitioners

purported to "reaffirm" Comair's purported termination of the Purchase Agreement in February

2020. *Id*. ¶ 9. On March 5, 2021, Boeing informed the Business Rescue Practitioners that their statements and purported termination of the Purchase Agreement constituted a repudiation and material breach of the Purchase Agreement and that Boeing would retain Comair's pre-delivery payments to mitigate Boeing's damages for Comair's breach of contract. *Id*. ¶ 10. Nevertheless, Boeing agreed to treat the Business Rescue Practitioners' letter as a termination of Comair's obligation to purchase the second and third Aircraft under the Excusable Delay provisions of the Purchase Agreement. *Id*.

On March 5, 2021, pursuant to Section 13 of the Rescue Plan, Comair amended the Rescue Plan to authorize the Business Rescue Practitioners to, *inter alia*, "cancel and/or reject" the Purchase Agreement (the "March 5 Rescue Plan Amendment").[10] The amendment states that Comair's performance under the Purchase Agreement and other "agreements will result in a significant hardship to the Company, which poses a threat to the future viability of the Company." March 5 Rescue Plan Amendment at 2. It also amended the Rescue Plan's dispute resolution mechanism for disputed claims, including by setting forth procedures for alternative arbitrators to adjudicate any disputed claims. *Id*. at 3.

On March 26, 2021, the Business Rescue Practitioners sent a letter to Boeing addressing the parties' dispute over the Purchase Agreement (the "March 26 Letter").[11] Boeing says that in that letter, the Business Rescue Practitioners "spell[] out their purported claims in detail. Quoting New York case law, and citing the Purchase Agreement and the Deferred Prosecution Agreement, the [Business Rescue Practitioners] alleged claims against Boeing for breach of contract, fraudulent inducement, and assignment." Response ¶ 11. In its March 30, 2021

---

[10]    A copy of the March 5 Rescue Plan Amendment is annexed as Exhibit 5 to the Response.

[11]    A copy of the March 26 Letter is annexed as Exhibit 1 to the Response. By order of the Court, Boeing filed Exhibit 1 under seal. *See Order signed on 8/18/2021 Granting Motion to File Under Seal* [ECF No. 17].

response to the March 26 Letter, Boeing denied Comair's claims, confirmed that the Purchase

Agreement had been terminated, and reserved all of its rights against Comair. *Id.* ¶ 12.

**The Business Rescue Practitioners' Investigation of Boeing**

The Business Rescue Practitioners assert that Comair's financial problems were

exacerbated by the fact that Comair's re-fleeting plan centered around the acquisition of the eight

Aircraft under the Purchase Agreement. Collyer Decl. ¶ 13. They say that because seven of the

Aircraft were not delivered, Comair faced increased costs associated with extending the

operation of older model aircraft in its fleet and lost expected revenue from the sale of those

older aircraft. *Id.* They contend that those costs were on top of the tens of millions of dollars that

Comair spent to finance the acquisition of the 737 MAX 8 Aircraft (including pre-delivery

deposits for the aircraft that remain undelivered) and fund related training, operations, and

maintenance costs. *Id.*

Based upon publicly available information, the Foreign Representative believes that

Comair may have various causes of action against Boeing and that those causes of action are

potentially significant contingent property interests of Comair. Reply ¶ 11. He asserts that (i)

Boeing is in possession of pre-delivery payments that Comair made for the undelivered 737

MAX 8 Aircraft; and (ii) Comair incurred millions of dollars in expenses associated with the

purchase of Aircraft #1, which was delivered weeks prior to the second 737 MAX 8 crash. *Id.*

The Foreign Representative contends that he must investigate Boeing's actions from the date

Comair contracted to purchase the 737 MAX 8 Aircraft up to the delivery of Aircraft #1 to

determine if such actions give rise to a colorable cause(s) of action. *Id.*

The Foreign Representative also maintains that publicly available information does not

provide a full picture of the universe of the Debtors' potential claims against Boeing—or the

strength and magnitude of the potential claims it already identified to Boeing. *See id*. ¶ 12. As

support, he notes that Boeing entered into a deferred prosecution agreement (the "DPA") with

the U.S. Department of Justice ("DOJ") in January 2021, well after the Rescue Plan was adopted

by Comair's creditors.[12] *Id*. He says that certain facts suggest that Boeing made fraudulent

misrepresentations to its airline customers and the DPA itself suggests that many other relevant

facts were not made available for public consumption. *Id*. He also contends that the DPA is not

dispositive of all potential causes of action that the Business Rescue Practitioners must

investigate with respect to Boeing. *Id*. The Foreign Representative advises that in addition to

fraudulent misrepresentation claims, he is considering breach of contract claims and requires

information about, among other things, Boeing's performance under the applicable warranty. *Id*.

**Chapter 15 Case**

On February 16, 2021, the Business Rescue Practitioners commenced this chapter 15

case.[13] In their Verified Petition,[14] they sought three forms of relief: (a) recognition of the South

African Proceeding under 11 U.S.C.§ 1517(b); (b) recognition of the Business Rescue

Practitioners as foreign representatives under 11 U.S.C. §§ 1509 and 1517; and (c) discretionary

---

[12]    On or about September 15, 2020, the United States House Committee on Transportation and Infrastructure released a report on the 737 MAX 8's failings. The Business Rescue Practitioners assert that this report identified problems with the 737 MAX 8 aircraft's design, construction, and certification. Motion ¶ 18. The United States Senate Committee on Commerce, Science & Transportation also launched an investigation that the Foreign Representative says culminated in a report dated December 2020 detailing serious wrongdoing by Boeing in the 737 MAX 8 certification process. *Id*. The DOJ ultimately charged Boeing with one count of criminal conspiracy to defraud the United States in connection with the Federal Aviation Administration's certification of the 737 MAX 8. *Id*. On or about 7 January 2021, Boeing admitted to criminal conspiracy and entered into the DPA with the DOJ, in exchange for which Boeing agreed to pay a total criminal monetary amount of over $2.5 billion, amongst other terms and conditions, including the creation of a fund to compensate its airline customers for damages incurred as a result of Boeing's criminal conduct. *Id*. ¶ 19.

[13]    *See Chapter 15 Petition for Recognition of Foreign Proceeding* [ECF No. 1].

[14]    *See Verified Petition for Recognition of Foreign Main Proceeding and for Related Relief Under Chapter 15 of The Bankruptcy Code, and Memorandum of Law in Support Thereof* [ECF No. 2] (the "**Verified Petition**").

relief under 11 U.S.C. § 1521(a)(7), specifically, application of 11 U.S.C. § 365 to this chapter

15 case. Verified Petition at 1, ¶ 4.  They did not request authority to conduct discovery in this

Court pursuant to 11 U.S.C. § 1521(a)(4) or Fed. R. Bankr. P. 2004.  On April 14, 2021, the

Court entered its Recognition Order.[15] It includes language that Boeing specifically negotiated to

preserve its setoff rights in the event Comair ever asserted claims against Boeing. Recognition

Order ¶ 7. In addition, the Recognition Order (a) recognized the Business Rescue Practitioners as

the Foreign Representatives of this proceeding, and (b) expressly empowered the Foreign

Representatives to "exercise the powers of a trustee under and to the extent provided by 11

U.S.C. §§ 1520 and 1521." *Id*. ¶¶ G, 8.

### The Motion

Comair commenced the South African Proceeding with the goal of saving the company

from liquidation and, in doing so, providing a meaningful distribution to its creditors. Collyer

Decl. ¶ 22. In furtherance of those goals, and in light of the significant negative impact that

Boeing's actions related to the 737 MAX 8 Aircraft allegedly have had on the Debtor, the

Foreign Representative seeks discovery to determine (a) the claims and causes of action that the

Debtor may have against Boeing in connection with the Purchase Agreement, (b) the Debtor's

rights (if any) to be compensated for any such damages from the fund created as part of Boeing's

settlement with the DOJ, and (c) the extent of the Debtor's claims against Boeing for the

repayment of deposits and other amounts paid by Comair pursuant to the Purchase Agreement.

Motion ¶ 20.

---

[15]    *See Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to Sections 504, 1509, 1515, 1517, 1520, 1521, and 1524 Under Chapter 15 of the Bankruptcy Code* [ECF No. 12] (the "Recognition Order").

By the Motion, the Foreign Representative seeks the entry of an order pursuant to section 1521 and Rules 2004 and 9016 that would: (i) permit the Foreign Representative to conduct discovery of Boeing, (ii) compel Boeing to produce documents within its possession, custody or control relevant to the Debtor's estate that are responsive to the requests as set forth in the Request for Production,[16] (iii) examine persons and entities as determined by the Foreign Representative to possess information relevant to his investigation into potential claims against Boeing, and (iv) obtain all information in such witnesses' possession, custody or control that is relevant to the Debtor's estate. *See id.* ¶ 23; *see also* Proposed Order ¶ 2.[17]

The Foreign Representative says that the requested discovery is necessary to facilitate his efforts to assess the viability, strength, and magnitude of potential causes of action against Boeing and the likelihood and extent of a monetary recovery. Reply ¶¶ 13, 31. He contends that given the potential magnitude of damages, the outcome of his investigation could have a significant impact on whether there remains "any reasonable prospect of the company being rescued"—one of his ongoing statutory duties under the Companies Act. *Id.* ¶ 13 (quoting Companies Act § 141); *see also id.* ¶ 31. Thus, he maintains that the requested discovery would enable him to fulfill his statutory duties under South African law. *Id.* ¶ 13.

Boeing is not a party to this chapter 15 case and has not appeared or filed a claim in the South African Proceeding. Boeing says that by its terms, the Rescue Plan does not anticipate the resolution of any claims against it or the distribution to creditors of any litigation proceeds that theoretically might result, and that the Debtor anticipates suing it separately, independent of its

---

[16] A copy of the Foreign Representative's First Request for Production (the "Request for Production") is annexed as Exhibit B to the Motion.

[17] *See Proposed Order Authorizing Discovery by Foreign Representatives Pursuant to 11 U.S.C. § 1521 and Fed. R. Bankr. P. 2004* [ECF No. 13-2] (the "Proposed Order").  A copy of the Proposed Order is annexed as Exhibit A to the Motion.

restructuring and at some unidentified time in the future. Response ¶¶ 2, 14.  Boeing maintains

that the Debtor has already identified the claims it will assert against it (and has already

described them in detail in the March 26 Letter) and that the Foreign Representative can offer no

compelling reason why he should be permitted to take extensive discovery of Boeing in the

context of this proceeding. *Id*. ¶¶ 2, 41. It contends that the Foreign Representative seeks to use

this Motion as a tool to pressure it—a potential litigation opponent—before actually filing the

lawsuit he has in mind. *Id*. at 1.

Boeing asserts that the Foreign Representative is not entitled to relief under section

1521(a)(4) because the discovery he requests is not "necessary to effectuate the purpose" of

chapter 15—*i.e.*, comity—since the purported claims do not relate to the South African

Proceeding. *See id*. ¶¶ 27-29. It also contends that even assuming, *arguendo*, that the purported

claims against it are "assets" of the Debtor, the requested discovery is not "necessary to protect"

those assets because the Debtor has sufficient information to assert those claims today in a court

of competent jurisdiction and there is no risk of spoliation in the interim, as Boeing is already

preserving the relevant materials. *Id*. ¶ 3.

As to Rule 2004, as a threshold issue, Boeing contends that the rule does not govern

discovery in a chapter 15 case, relying principally on *In re Glitnir Banki HF*, No. 08-14757

(SMB), 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ("*Glitnir*"). *Id*. ¶¶ 38-40. The Court

in *Glitnir* reasoned that "Rule 2004 may complement [] rights [under Section 1521(a)(4)], and

may provide a procedural mechanism to obtain a subpoena" to pursue discovery, but ultimately a

movant must "demonstrate that its requests meet [Section 1521's] criteria." *Glitnir*, 2011 WL

3652764, at *6. Boeing asserts that the Foreign Representative has failed to establish grounds for

taking discovery under section 1521(a)(4) and, as such, cannot obtain discovery under Rule

2004.  *See* Response ¶ 38 (citing *Glitnir*, 2011 WL 3652764, at *6). Boeing also maintains that

the Foreign Representative is not entitled to discovery under Rule 2004 because the rule only

allows discovery "related" to a bankruptcy proceeding. *Id*. ¶¶ 4, 37-38, 47. Boeing likens the

Rescue Plan to a confirmed plan under chapter 11. *Id*. ¶ 48. It contends that post-confirmation,

the scope of Rule 2004 is limited to the administration of the case (*e.g*., discovery in connection

with motions to convert, dismiss, modify, or implement a plan, or revoke a confirmation order).

*Id*. ¶¶ 4, 49. It says at that point, discovery to advance potential future civil litigation is not

appropriate. *Id*. ¶ 4.

Boeing also contends that relief under section 1521(a)(4) and Rule 2004 is discretionary,

not mandatory. *Id*. ¶ 5. It asserts that even if the Court finds the Motion nominally proper under

either provision, it should nevertheless deny the Motion because the relief requested is massively

overbroad. *Id*. ¶¶ 5, 52. Boeing contends that the Proposed Order would authorize the Foreign

Representative to issue a document subpoena with forty individual requests covering more than

eleven years (many of which it claims have no relation to the parties' commercial relationship),

and as many examination subpoenas as he alone "deems appropriate." *Id*. ¶ 5. Boeing asserts that

such "unfettered authority" is wholly unwarranted here and that the Court should exercise its

discretion to deny the Motion. *Id*.

The Court considers those matters below.

## **Discussion**

Section 1521 of the Bankruptcy Code provides a non-exclusive list of relief available to a

foreign representative upon recognition of a foreign proceeding, whether as a main or nonmain

proceeding. Section 1521(a)(4) states that:

> [W]here necessary to effectuate the purpose of this chapter and to
> protect the assets of the debtor or the interests of the creditors, the

court may, at the request of the foreign representative, grant any appropriate relief, including—

(4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.

11 U.S.C. § 1521(a)(4). Section 1522(a) limits the relief available under section 1521 by specifying that the court may grant such relief "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). The Foreign Representative has the burden of demonstrating that the relief he is seeking in the Motion falls within the scope of section 1521(a)(4). *See In re AJW Offshore, Ltd.*, 488 B.R. 551, 560-561 (Bankr. E.D.N.Y. 2013). As discussed below, Boeing contends that the Foreign Representative has not met that burden.

Bankruptcy Rule 2004 allows the Court, on motion of any party in interest, to order the examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004(b). "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). In *Glitnir,* Judge Bernstein rejected the request of a foreign representative under section 1521(a)(4) and Rule 2004 to obtain discovery of the foreign debtor's principals' personal financial information, because the information requested exceeded the scope of permissible discovery under section 1521(a)(4) and Rule 2004 cannot expand the scope of permissible discovery under that section. 2011 WL 3652764, at *6. In doing so, he reasoned that section 1521(a)(4) expressly governs a foreign representative's discovery rights and that while Rule 2004 "complements those rights, and may

provide a procedural mechanism to obtain a subpoena under [Bankruptcy Rule] 9016," it "cannot expand those rights beyond the what the statute . . . permit[s]." *Id.* The court found that "while analogies to Rule 2004 are instructive, the [f]oreign [r]epresentative must ultimately demonstrate that its requests meet the statute's criteria." *Id.* (citations omitted). Boeing contends that section 2075 of title 28 of the United States Code[18] both supports the *Glitnir* construction of the interplay among section 1521(a)(4) and Rule 2004, and "acknowledges a more general mismatch between Rule 2004 and chapter 15." Response ¶ 39. As to the latter, it notes that Rule 2004 authorizes examination into "any matter which may affect the administration of the debtor's estate," but that the "filing of a chapter 15 case does not create an estate." *Id.* (citing *Glitnir*, 2011 WL 3652764, at * 6 n.15). It argues that the Court should deny the requested discovery because Rule 2004 is not applicable in chapter 15 cases and because, in any event, it runs afoul of section 1521(a)(4) and, as such, cannot be sanctioned under Rule 2004. *Id.* ¶¶ 38-39.

Boeing contends that the Foreign Representative is not entitled to relief under section 1521(a)(4) because (i) the requested discovery will not "effectuate the purpose" of Chapter 15; (ii) the requested discovery is not necessary to protect Comair's assets; and (iii) the relief the Foreign Representative is seeking does not sufficiently protect its interests. *Id.* ¶¶ 27-36. The Court finds no merit in those contentions. As discussed below, the Court finds that the discovery that the Foreign Representative is seeking falls squarely within the four corners of section 1521(a)(4) of the Bankruptcy Code. *Cf In re Millennium Global Emerging Credit Master Fund*

---

[18]    28 U.S.C. § 2075 states in part that

> The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right.

28 U.S.C. § 2075.

*Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012) (noting that in rejecting application of Rule

2004, *Glitnir* "read § 1521(a)(4) to provide for discovery only of matters involving the debtor,

rather than the debtor's principals.").  Since the Foreign Representative can obtain the discovery

he seeks pursuant to section 1521(a)(4), the discussion of the application of Rule 2004 in chapter

15 cases is academic.[19] The Court will not further consider the application of Rule 2004 herein.

Whether The Requested Discovery Would
"Effectuate the Purpose" Of Chapter 15

Post-recognition relief under section 1521 "is largely discretionary and turns on

subjective factors that embody the principles of comity." *In re Bear Stearns High-Grade*

*Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (citations

omitted). *See also In re Agrokor D.D.,* 591 B.R. 163, 186 (Bankr. S.D.N.Y. 2018) ("The court

should be guided by principles of comity and cooperation with foreign courts in deciding

whether to grant the foreign representative additional post-recognition relief."). "Comity is the

recognition which one nation allows within its territory to the legislative, executive, or judicial

acts of another nation, having due regard both to international duty and convenience, and to the

rights of its own citizens, or of other persons who are under the protection of its laws." *In re*

---

[19]    Courts have found that Rule 2004 applies in chapter 15 cases. *See In re Transbrasil S.A. Linhas Aéreas*, No. 19-23700-CIV, 2020 WL 10458631, at *5 (S.D. Fla. Mar. 16, 2020) (the court analyzed the interplay between Bankruptcy Rule 2004 and Section 1521(a) and found that it "can find [no authority] approving the holding in *In re Glitnir* with respect to the issue of whether section 1521(a)(4) limits discovery otherwise available under Rule 2004(b)."); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 810-811 (Bankr. S.D.N.Y 2018) ("Relief sought pursuant to Bankruptcy Rule 2004 may also be available pursuant to sections 1507, 1521(a)(4) or 1521(a)(7)."); *In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. 899, 910 (Bankr. S.D. Fla. 2015) ("*Glitnir* does not hold that Rule 2004 is inapplicable in chapter 15. It simply clarifies that any discovery pursuant to Rule 2004 should conform to the limits of section 1521"); *In re AJW Offshore, Ltd.*, 488 B.R. at 561 (granting "discovery under § 1521(a)(4) . . . by making examination and production of documents under Rule 2004 of the Federal Rule of Bankruptcy Procedure . . . available"); *In re Markus*, 607 B.R. 379, 390 (Bankr. S.D.N.Y. 2019) *aff'd in part, vacated in part, remanded sub nom. Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020) (noting that under section 1507(a), "Rule 2004 [is] fully applicable in a chapter 15 case") (internal quotation omitted).

*Commodore Int'l, Ltd.*, 242 B.R. 243, 256 (Bankr. S.D.N.Y. 1999) (citation omitted). It plays a

significant role in cross-border insolvency proceedings. *In re Cozumel Caribe, S.A. de C.V.*, 482

B.R. 96, 114-15 (Bankr. S.D.N.Y. 2012).

Boeing contends that "comity" plays no role whatsoever in the resolution of this dispute

because (i) the Court has already granted the Foreign Representative's petition for recognition of

the South African Proceeding, (ii) Comair has not commenced litigation against Boeing in that

proceeding (or otherwise) and is not seeking assistance to conduct discovery in litigation

properly commenced in a foreign proceeding; and (iii) the Rescue Plan is not conditioned on the

prosecution or even valuation or estimation of Comair's claims against Boeing. Response ¶ 29.

The Foreign Representative disputes those assertions.

The fact that this Court has granted recognition to the South African Proceeding does not

bar the requested relief. Chapter 15 is designed to facilitate "protection and maximization of the

value of the debtor's assets." 11 U.S.C. § 1501(a)(4). That is what the discovery sought by the

Foreign Representative is calculated to do. As discussed below, the Rescue Plan has not been

terminated. It is on-going. The Foreign Representative has a statutory duty under South African

law to "investigate the company's affairs, business, property, and financial situation."

Companies Act § 141. In the Motion, the Foreign Representative seeks relief that, if granted,

plainly will assist him in discharging that duty by allowing him to fully investigate potential

causes of action against Boeing. Those causes of action may be significant "contingent property

interests" of the Debtor. *See In re Millennium*, 471 B.R. at 346 (citing *In re Kane*, 628 F.3d 631,

641 n.7 (3d Cir. 2000) (noting that property of the estate "encompasses contingent property

interests such as causes of action")). The discovery that the Foreign Representative is seeking

"qualif[ies] as the taking of evidence 'concerning the debtor[']s[] assets' under §1521(a)(4)." *Id.*

Thus, "[b]road discovery under section 1521" would "promot[e] a significant chapter 15 objective" by permitting the Foreign Representative to "comply with [his] duties." *See In re Markus*, 607 B.R. at 390 (quoting *In re Platinum Partners*, 583 B.R. at 821).

The Foreign Representative asserts, and the Court agrees, that the fact that Comair has not commenced litigation against Boeing in South Africa and is not seeking assistance to conduct discovery in litigation properly commenced in a foreign proceeding is not a bar to the relief under section 1521(a)(4). Reply ¶ 18. Relief under section 1521(a)(4) becomes available "[u]pon recognition of a foreign proceeding." 11 U.S.C. § 1521(a)(4). It does not require that there be pending litigation. Boeing argues that the Foreign Representative does not need the requested discovery because he has completed his adjudication of creditor claims in the South African Proceeding. *See* Response ¶ 30. Boeing is correct that courts have ordered chapter 15 discovery in aid of a foreign representative's efforts to liquidate claims, *In re Hughes*, 281 B.R. 224, 229 (Bankr. S.D.N.Y. 2002), and where the foreign representative could not obtain the debtor's books and records it required to assure an economic and expeditious administration of the debtor's estate, *In re Gee*, 53 B.R. 891, 905 (Bankr. S.D.N.Y. 1985), and that the discovery that the Foreign Representative is seeking falls outside of those parameters. However, that does not bar the Foreign Representative from obtaining the relief he is seeking in the Motion. As the Foreign Representative notes, the requested discovery of Boeing is necessary to facilitate his efforts to assess the viability of potential causes of action against Boeing and the extent of potential monetary recovery from Boeing. Reply ¶ 13. Section 1521(a)(4) authorizes discovery into "the debtor's assets, affairs, rights, obligations, or liabilities" without any limitation based on how the foreign representative intends to use the fruits of the requested discovery. 11 U.S.C. § 1521(a)(4). Relief under section 1521(a)(4) is available to foreign representatives investigating

potential causes of action irrespective of how any future litigation proceeds might be used. *See, e.g.*, *In re Transbrasil S.A. Linhas Aéreas*, 860 Fed. Appx. 163, 165 (11th Cir. 2021) (affirming bankruptcy court's decision to authorize discovery alleged to be relevant "to support the Trustee's claims against the Affected Parties in the Brazilian Bankruptcy Case" and "to investigate potential claims"); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. at 819 (granting foreign representative's motion seeking "pre-litigation discovery"); *Glitnir*, 2011 WL 3652764, at *4 (granting discovery so as to "enable the Foreign Representative to . . . assess the viability of additional claims.").

The Court finds that the discovery sought by the Foreign Representative concerning Comair's potential claims against Boeing will assist him to "effectuate the purpose" of Chapter 15.

Whether The Requested Discovery Is
Necessary To Protect Comair's Assets

Boeing asserts that the Foreign Representative makes no effort to carry his burden to show that the discovery sought is "necessary . . . to protect the assets of the debtor or the interests of the creditors[.]" 11 U.S.C. § 1521(a)(4). It maintains that the "interests of the creditors" are not at issue in this Motion because the Rescue Plan is not conditioned on the prosecution or even valuation or estimation of Comair's claims against Boeing and does not anticipate the distribution of any litigation proceeds to creditors. Response ¶ 29. Moreover, it contends that even assuming, *arguendo*, that Comair's purported claims are "assets" within the meaning of chapter 15, those assets do not need this Court's protection. *Id.* ¶ 33. Boeing says the latter is so because it is already preserving relevant materials, and, thus, there is no risk of spoliation. *Id.* It also contends that the Foreign Representative is well aware that it is currently defending litigation brought by other customers asserting claims similar to those Comair has already

21

described in the March 26 Letter. *Id.*[20] It maintains that Comair will be fully able to pursue any claims it has against Boeing in the United States, outside the bankruptcy proceedings if it chooses to do so, and that civil litigation discovery rules will provide it all the protection it needs. *Id.*

The Rescue Plan does not refer to Comair's dispute with Boeing or any claims that Comair may assert against Boeing. Indeed, as filed, that plan fixed March 31, 2021, as the target "Substantial Implementation Date," *see* Rescue Plan §7.4.2.2, which, Boeing contends, is inconsistent with any possibility of prosecuting and resolving litigation against it as part of the Rescue Plan. Response ¶ 14. Moreover, as Boeing notes, the plan provides a waterfall of distributions of assets to creditors that does not specify any litigation proceeds. *See* Rescue Plan § 6.10. Boeing maintains that, as filed, the Rescue Plan contemplated that the Business Rescue Practitioners would monitor Comair's operating costs, and "mothball" Comair's fleet for a period of time as the company recapitalized and the lockdowns implemented as a result of COVID-19 relaxed. Response ¶ 15. It contends that it is through that retrenchment and recapitalization that the Business Rescue Practitioners seek to maintain Comair as a going concern, increasing recovery to creditors, and maintaining the jobs of Comair's employees. *Id.* It also asserts that since the adoption of the Rescue Plan, in furtherance of the plan, the Business Rescue Practitioners have continued to operate Comair and have substantially implemented the plan. *Id.* ¶ 16. In other words, Boeing maintains that Comair's reorganization is essentially complete. *Id.* at 1. To that end, Boeing asserts that:

---

[20]    *See* Response ¶ 33 (citing *Smartwings, A.S. v. The Boeing Company*, Case No. 2:21-cv-918 (W.D. Wash. July 9, 2021); *Wilmington Tr. Co. v. The Boeing Company*, Case No. 2:20-cv-402 (W.D. Wash. Mar. 13, 2020); *Norwegian Air Shuttle ASA v. The Boeing Company*, Case No. 20-cv-04108 (N.D. Ill. July 13, 2020)).

> The recapitalization of the Company under the Rescue Plan is complete, as the company received the contemplated equity and debt funding. December 31, 2020 Status Update;[21]
>
> The Business Rescue Practitioners report that "adjudication of the Creditors' Claims has been completed." July 8, 2021 Status Update; and
>
> The Business Rescue Practitioners have "repudiated or contractually terminated, as the case may be, those onerous obligations and agreements of the Company that commenced prior to the commencement of the Company's business rescue proceedings." *Id*.

Response ¶¶ 17-19.

Under South African law, the adoption of a business rescue plan by a company's creditors does not end the business rescue proceeding. Rather, such a proceeding ends upon the occurrence of one of the following "Termination Events":

> (i) the High Court sets aside the resolution or order that began the business rescue proceedings or the High Court converts business rescue proceedings into liquidation proceedings;
>
> (ii) the business rescue practitioner files a notice of termination of business rescue proceedings with the Commission;
>
> (iii) a business rescue plan has been proposed and rejected and no affected person has acted to extend the proceedings in any manner contemplated by the Companies Act; or
>
> (iv) a business rescue plan has been adopted and the business rescue practitioner has subsequently filed a notice of substantial implementation of the plan.

Harduth Decl. ¶ 28 (citing Companies Act § 132).

A Termination Event has not occurred in the South African Proceeding. Since the creditors adopted the Rescue Plan, the Business Rescue Practitioners have provided affected persons with notice of corrections and revisions to the Rescue Plan, as well as Status Updates on

---

[21]    A copy of the December 31, 2020 Status Update is annexed as Exhibit 3 to the Response.

the progress of the South African Proceeding. Collyer Decl. ¶¶ 29, 31.  The Business Rescue

Practitioners are required to publish these Status Updates precisely because the Rescue Plan is

not complete. *See, e.g.,* July 8, 2011 Status Update § 1 (noting that by statute, the Foreign

Representative is required to file Status Reports because the Business Rescue Proceedings have

not concluded). Moreover, the Business Rescue Practitioners are free to and have negotiated

amendments to the Rescue Plan to ensure Comair's feasibility as a going concern upon its

emergence from business rescue, including through the March 5 Rescue Plan Amendment. *See*

Harduth Decl. ¶ 29; March 5 Rescue Plan Amendment. Accordingly, the Rescue Plan and South

African law do not foreclose the Foreign Representative from pursuing claims against Boeing in

furtherance of his effort to rescue the company. As previously noted, those potential causes of

action for money damages are "contingent property interests of the debtor" and the discovery

that the Foreign Representative is seeking with respect to the potential causes of action qualifies

as "the taking of evidence 'concerning the debtor's assets' under section 1521(a)(4)." *See*

*Millennium*, 471 B.R. at 346 (citing 11 U.S.C. § 1521(a)(4)). Accordingly, the relief that the

Foreign Representative seeks is plainly necessary to protect Comair's assets.

Boeing also argues that even assuming *arguendo* that these claims amount to contingent

property interests of the Debtor, the Court should deny the Foreign Representative's request to

conduct discovery of Boeing because there is no risk of evidence spoliation, and the requested

discovery is thus not necessary to protect those contingent assets. Response ¶¶ 3, 33.  Boeing

provides no legal support for the argument and the Court finds none. Moreover, the fact that the

Debtor can seek discovery under the applicable rules of civil procedure if it ultimately

commences litigation against Boeing, *id.* ¶ 33, is not a bar to the relief sought in the Motion. To

find otherwise would completely eviscerate the investigatory function that section 1521(a)(4) is

designed to serve. *See Glitnir*, 2011 WL 3652764, at *5 n.12 (noting that Rule 2004

examinations are permitted "even though it is likely that the trustee will eventually sue the

target.").

The Court finds that the requested discovery concerning Comair's potential claims

against Boeing is necessary to protect Comair's assets.

Whether The Relief Sought
Sufficiently Protects Boeing's Interests

By application of section 1522(a), the Court can grant the Foreign Representative leave to

take discovery from Boeing only if Boeing's interests are "sufficiently protected." 11 U.S.C. §

1522(a). The statute does not define the term "sufficiently protected". However, the case law is

clear that in applying that standard, the Court must balance the Foreign Representative's need for

the requested discovery with Boeing's interests and tailor the relief in a way that does not unduly

favor the Foreign Representative over Boeing. *See In re Tri–Continental Exchange Ltd.,* 349

B.R. 627, 637 (Bankr. E.D. Cal. 2006) ("Standards that inform the analysis of § 1522 protective

measures in connection with discretionary relief emphasize the need to tailor relief and

conditions so as to balance the relief granted to the foreign representative and the interests of

those affected by such relief, without unduly favoring one group of creditors over another.")

(citing GUIDE TO ENACTMENT OF THE UNCITRAL MODEL LAW ON CROSS–BORDER INSOLVENCY

(the "GUIDE") ¶¶ 161-63); *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 626 (Bankr. S.D.N.Y.

2010) ("The idea underlying [§ 1522] is that there should be a balance between relief that may be

granted to the foreign representative and the interests of the persons that may be affected by such

relief.") (citing GUIDE ¶ 161). In short, "[a] determination of sufficient protection requires a

balancing of the respective parties' interests." *In re ENNIA Caribe Holding N.V.*, 596 B.R. 316,

322 (Bankr. S.D.N.Y. 2019) (internal citation omitted).

Boeing contends that the Foreign Representative does not, and cannot, demonstrate that the Motion strikes that balance because Boeing is not a hypothetical future litigation adversary whose conduct the Foreign Representative must assess before deciding whether to file suit. Response ¶ 35. Boeing says that is so, because in the March 26 Letter, Comair articulated its purported claims against it. *Id.* Boeing maintains that, therefore, denying the Foreign Representative's Motion would in no way hinder Comair's position as a civil litigant if it ultimately decides to file suit. *Id*. However, it contends that granting the Motion would subject it to massively expensive and lengthy discovery before any suit is filed, while subjecting this Court to the burden of resolving the numerous, inevitable discovery disputes that would arise given the breadth of the Request for Production and the vagueness of his demand to examine any witness that he deems "appropriate." *Id*.

Generally, a litigant cannot use the bankruptcy laws as a "back door" to benefit "pending litigation outside of the bankruptcy court." *In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002). Boeing says that, in substance, the Foreign Representative is attempting to do just that. Boeing's commercial dispute with Comair has been pending for over a year and a half. Boeing says that based on the claim described in the March 26 Letter, it is not a hypothetical future litigation adversary whose conduct the Foreign Representative must assess before deciding on whether to file suit. Response ¶ 35. Boeing argues that section 1521(a)(4) does not contemplate injecting the court into its long-standing commercial dispute with Comair (even though a lawsuit has not been filed), and that the Court should not permit the Foreign Representative to circumvent the protections of the adversary process that Boeing will have if Comair files the lawsuit it has already described. *Id*. ¶ 36. In that context, Boeing argues that the

Foreign Representative does not, and cannot, demonstrate that the Motion strikes the necessary balance called for under section 1522. *Id.*

Boeing overstates the significance of the March 26 Letter and in doing so, downplays the Foreign Representative's need for discovery. In that three-page letter, the Foreign Representative identified one of the potential causes of action against Boeing that he is investigating. He maintains that the facts supporting that single claim were garnered from publicly available information, which does not reveal the complete picture of Comair's relationship with Boeing. Reply ¶ 23. The Foreign Representative also is exploring contract and other claims which would be substantiated by facts not available in the public domain. The Foreign Representative requires discovery to complete his investigation and satisfy his duties under South African law. *Id.* Discovery concerning Comair's potential claims against Boeing thus falls squarely within the scope of section 1521(a)(4). *See Millennium*, 471 B.R. at 346; *Markus*, 607 B.R. at 390; *Platinum Partners*, 583 B.R. at 821.

Based on the foregoing, the Court finds that the Foreign Representative has established grounds under section 1521(a)(4) to conduct discovery of Boeing relating to causes of action that Comair may hold against Boeing and the extent of Comair's potential monetary recovery from Boeing.

The Foreign Representative has served 40 document requests seeking documents relating to events that occurred over a period of more than eleven years. *See* Request for Production. He has declined to request the examination of specific persons or entities, but rather generally seeks to examine an indeterminate number of "[w]itnesses as [he] deem[s] appropriate[.]" *See* Motion ¶ 23; *see also* Proposed Order ¶ 2. As noted, Boeing contends that the proposed discovery is massively overbroad. The Foreign Representative disputes that contention. The parties are

directed to meet and confer in an effort to resolve their disputes regarding the proposed

discovery. To the extent that they are unable to resolve their disputes, they are directed to contact

Chambers to arrange a discovery conference in accordance with Local Bankruptcy Rule 7007-1

and the Court's Chambers' Rules governing discovery disputes.

### Conclusion

Based on the foregoing, the Court grants the Motion to the extent set forth herein.

IT IS SO ORDERED.

Dated: New York, New York
       November 14, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge