UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
In re:                                               :
                                                     :    Case No. 21-10298 (JLG)
                                                     :
COMAIR LIMITED,                                      :
                                                     :    Chapter 15
                                                     :
        *Debtor in a foreign proceeding.*[1]          :
                                                     :
------------------------------------------------------- x

## MEMORANDUM DECISION GRANTING MOTION TO (A) AMEND ORDER RECOGNIZING FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1517(D) AND 1522(C), AND (B) SUBSTITUTE THE PROVISIONAL LIQUIDATORS IN PENDING CONTESTED MATTERS PURSUANT TO BANKRUPTCY RULE 7025

A P P E A R A N C E S :

PILLSBURY WINTHROP SHAW PITTMAN LLP
*Attorneys for the Foreign Representative of
Comair Limited*
31 West 52nd Street
New York, NY 10019-6131
By: John A. Pintarelli, Esq.
Hugh M. McDonald, Esq.
Rahman Connelly, Esq.

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
*Attorneys for The Boeing Company*
601 Lexington Avenue
New York, New York 10022
By: David R. Seligman, Esq.
Susan D. Golden, Esq.
Michael B. Slade, Esq.

---

[1]    The Debtor's company registration number is 1967/006783/06. The Debtor's registered business address is
1 Marignane Drive, Bonaero Park, Kempton Park, Gauteng 1619, South Africa.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

Comair Limited ("Comair") is a commercial airline incorporated in the Republic of South Africa. In May 2020, it commenced a Business Rescue Proceeding, essentially to rehabilitate its business, under the South African Companies Act of 2008, in the High Court of South Africa (the "High Court"). Comair appointed Richard Ferguson and Shaun Collyer as Comair's business rescue petitioners (the "Business Rescue Practitioners" or "BRPs").[3] In September 2020, Comair's creditors approved a Rescue Plan, and in February 2021, the BRPs filed a Verified Petition[4] in this Court, commencing Comair's case under chapter 15 of title 11 of the United States Code (the "Chapter 15 Case"), and in doing so, seeking recognition of the Business Rescue Proceeding under chapter 15 of the Bankruptcy Code. In April 2021, the Court entered an order (the "Recognition Order")[5] granting recognition of the Business Rescue Proceeding as a foreign main proceeding under section 1502(4) of the Bankruptcy Code and recognizing the BRPs as foreign representatives of Comair within the meaning of section 101(24) of the Bankruptcy Code. In November 2021, the

---

[2]   Capitalized terms used, but not defined, in the Introduction have the meanings ascribed to them herein. References to "ECF No. __" are to filings entered on the docket in the main chapter 15 case, No. 21-10298.

[3]   Mr. Collyer was later replaced by Neil Hablutzel.

[4]   *Verified Petition for Recognition of Foreign Main Proceeding and for Related Relief Under Chapter 15 of the Bankruptcy Code, and Memorandum of Law In Support Thereof,* ECF No. 2 (the "Verified Petition"). Shaun Collyer, Comair's foreign representative at the time, submitted a declaration in support of the Verified Petition. *See Declaration of Shaun Collyer in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding*, ECF No. 3 (the "Collyer Decl."). Nastascha Harduth, a South African attorney and then-counsel to the BRPs, also filed a supporting declaration. *Declaration of Nastascha Harduth in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding*, ECF No. 4 (the "First Harduth Decl."). Another supporting declaration was submitted by John A. Pintarelli, then-counsel to the BRPs in the United States. *Declaration of John A. Pintarelli*, ECF No. 5.

[5]   *Order Granting Recognition and Relief In Air Of A Foreign Main Proceeding Pursuant to Sections 1504, 1509, 1515, 1517, 1520, 1521, and 1524 Under Chapter 15 of the Bankruptcy Code*, ECF No. 12 (the "Recognition Order").

Court granted the BRPs Discovery Motion and authorized the BRPs to take discovery of the Boeing Company ("Boeing").

On June 14, 2022, the High Court entered a provisional order granting the BRPs' Winding Up Application, which effectively terminated the Business Rescue Proceeding and placed Comair into a provisional liquidation (the "Provisional Liquidation"). On June 17, 2022, the High Court appointed Cloete Murray, Kgashane Christopher Monyela, Ahmed Carim, Tracy Anne Cameron, and Buhle Jeffery Eric Buthelezi as the joint provisional liquidators (the "JPLs") of Comair in the Provisional Liquidation. On June 23, 2022, the High Court certified the appointment of the JPLs. The matter before the Court is the JPLs motion (the "Motion")[6] seeking the entry of an order:

(a) modifying the Court's prior order recognizing Comair's Business Rescue Proceeding, ECF No. 12, in South Africa to

   i.  recognize Comair's liquidation proceeding in South Africa as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code and

   ii.  recognize the JPLs as foreign representatives within the meaning of section 101(24) of the Bankruptcy Code; and

(b) substituting the JPLs for the Business Rescue Practitioners in all pending contested matters pursuant to Federal Rule of Civil Procedure 25(c) (made applicable to this proceeding by Federal Bankruptcy Rule 7025 and to contested matters by Rule 9014(c)).

---

[6]    *Motion to (A) Amend Recognition Order Recognizing Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1517(d) and 1522(c), and (B) Substitute the Provisional Liquidators in Pending Contested Matters Pursuant to Bankruptcy Rule 7025*, ECF No. 56 (the "Motion"). The Motion is supported by the declaration of Nastascha Harduth, South African legal counsel to the JPLs. *Declaration of Nastascha Harduth in Support of Motion to (A) Amend Recognition Order Recognizing Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1517(d) and 1522(c), and (B) Substitute the Provisional Liquidators in Pending Contested Matters Pursuant to Bankruptcy Rule 7025*, ECF No. 57 (the "Second Harduth Decl.").

Boeing filed an objection to the Motion (the "Objection" or "Obj.").[7] The JPLs filed a reply in support of the Motion (the "Reply").[8] The Court heard arguments on the Motion. At the hearing, this Court instructed the JPLs' counsel to supplement the Second Harduth Declaration to address certain developments in the proceeding before the High Court, after which Ms. Harduth duly filed her supplemental declaration.[9] Boeing also filed an objection to the Supplemental Harduth Declaration,[10] to which the JPLs filed a brief response.[11]

For the reasons set forth herein, the Court grants the Motion.

---

[7]    *Objection of the Boeing Company to Joint Provisional Liquidators' Motion to Amend Order Recognizing Foreign Main Proceeding and Substitute Liquidators Under Chapter 15 of the Bankruptcy Code*, ECF No. 60 (the "Objection" or "Obj.").

[8]    *Reply in Support of Motion to (A) Amend Order Recognizing Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1517(d) and 1522(c) and Substitute the Provisional Liquidators in Pending Contested Matters Pursuant to Bankruptcy Rule 7025*, ECF No. 63.

[9]    *Supplemental Declaration of Nastascha Harduth in Support of Motion to (A) Amend Order Recognizing Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1517(D) and 1522(C), and (B) Substitute the Joint Provisional Liquidators in Pending Contested Matters Pursuant to Bankruptcy Rule 7025*, ECF No. 66 (the "Supplemental Harduth Declaration" or "Supp. Harduth Decl.").

[10]    Boeing objects to the filing of the Supplemental Harduth Declaration because it contends that the Court did not authorize the JPLs to submit a "third substantive declaration offering yet another set of new opinions—after the hearing on the JPLs' motion—without giving Boeing a chance to respond." *See Objection of the Boeing Company to the Supplemental Third Declaration of Nastascha Harduth*, ECF No. 67 (the "Supp. Obj.") ¶ 1. It contends that Ms. Harduth's new opinions are "improper, incorrect, and inconsistent", *id.* ¶ 2, but does not expound or substantiate its contention. The Court disagrees. To the extent the Court relies on the statements made by Ms. Harduth in her Supplemental Declaration, the Court is "empowered to make determinations regarding foreign law, and granted discretion to decide on its own informed judgment what materials to consider in doing so." *In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 299 (Bankr. S.D.N.Y. 2018); *see also In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160, 173 (Bankr. S.D.N.Y. 2019) ("Judge Vyskocil was correct to consider Declarations discussing Russian law when deciding whether to recognize the Foreign Representative."); *In re Loy*, 448 B.R. 420, 442 (Bankr. E.D. Va. 2011) ("On the specific and unique circumstances here, the Court has a duty to allow the Debtor to present all the available evidence that is crucial to his case . . . . [C]ourts are loath to exclude otherwise admissible evidence because of untimely production."). Boeing clearly had an opportunity to substantively dispute the conclusions of law provided by Ms. Harduth in support of the Motion. *See generally* Suppl. Obj. Because Boeing fails to put forward substantive objections to any of Ms. Harduth's statements in its Supplemental Objection, the objection is overruled.

[11]    *Joint Provisional Liquidators' Response to Objection of the Boeing Company to the Supplemental Third Declaration of Nastascha Harduth*, ECF No. 68 (the "Supp. Decl. Resp.").

## Jurisdiction

The Court has jurisdiction over the Motion pursuant to §§ 1334(a) and 157(a) of title 28 of the United States Code, and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

## Background

On September 18, 2013, Comair and Boeing entered into an agreement (the "Purchase Agreement") for the sale, manufacture and delivery of eight 737 MAX 8 aircraft (the "Aircraft"). Only one Aircraft was delivered as scheduled under the agreement. In March 2019, following two fatal crashes involving 737 MAX 8 aircraft manufactured by Boeing, the Federal Aviation Administration grounded all 737 MAX 8 aircraft worldwide, thereby delaying two deliveries of Aircraft scheduled under the Purchase Agreement. Comair terminated the Purchase Agreement before Boeing delivered any of the remaining seven Aircraft. Comair asserts that the consequential disruption to Comair's re-fleeting plan, coupled with the worldwide COVID-19 pandemic, contributed to its financial distress.

Comair Business Rescue Proceeding

Chapter 6 of the South African Companies Act 71 of 2008 ("Companies Act") governs "Business Rescue and Compromise with Creditors."[12] The High Court of South Africa (the "High Court") has exclusive jurisdiction over business rescue proceedings. Companies Act § 128(1)(e).The goal of a business rescue proceeding is to facilitate the rehabilitation of a financially distressed company by providing for:

---

[12]    A copy of chapter 6 of the Companies Act of 2008 is annexed as Exhibit A to the First Harduth Declaration.

(i) the temporary supervision of the company, and the management of its affairs, business and property by a business rescue practitioner; (ii) a temporary moratorium (stay) on the rights of claimants against the company or in respect of property in its possession; and (iii) the development and implementation, if approved, of a business rescue plan to rescue the company by restructuring its business, property, debt, affairs, and equity in a manner that maximizes the likelihood of the company continuing into existence on a solvent basis or, if that is not possible, results in a better return for the company's creditors or shareholders than would result from the immediate liquidation of the company.

Harduth Decl. ¶ 8 (citing Companies Act § 128(1)(b)).[13] A company in a business rescue proceeding is placed under the supervision of a business rescue practitioner, who, "is an officer of the court, and must report to the court in accordance with any applicable rules of, or orders made by, the court," Companies Act § 140(3)(a), and who, without limitation, "has full management control of the company in substitution for its board and pre-existing management," *id.* § 140(1)(a). "[T]he board of a company may resolve that the company voluntarily begin business rescue proceedings and place the company under supervision, if the board has reasonable grounds to believe that— *(a)* the company is financially distressed; and *(b)* there appears to be a reasonable prospect of rescuing the company," *id.* § 129(1). Without limitation, business rescue proceeding begins when the company "files a resolution to place itself under supervision in terms of section

---

[13]   That section states that

''business rescue'' means proceedings to facilitate the rehabilitation of a company that is financially distressed by providing for—
(i) the temporary supervision of the company, and of the management of its affairs, business and property;
(ii) a temporary moratorium on the rights of claimants against the company or in respect of property in its possession; and
(iii) the development and implementation, if approved, of a plan to rescue the company by restructuring its affairs, business, property, debt and other liabilities, and equity in a manner that maximises the likelihood of the company continuing in existence on a solvent basis or, if it is not possible for the company to so continue in existence, results in a better return for the company's creditors or shareholders than would result from the immediate liquidation of the company.

Companies Act § 128(1)(b).

129(3)", *id.* § 132(a)(i), and it ends when "the court . . . has converted the proceedings to liquidation proceedings," *id.* § 132(2)(a)(ii).

On May 4, 2020, Comair's board of directors adopted a resolution (the "Board Resolution") authorizing the commencement of business rescue proceedings under section 129(1). The Board Resolution appointed Richard Ferguson and Shaun Collyer as the Business Rescue Practitioners pursuant to section 129(3)(b) of the Companies Act. *See* First Harduth Decl. ¶ 29. On May 5, 2020, Comair commenced a business rescue proceeding (the "Business Rescue Proceeding"). First Harduth Decl. ¶¶ 11, 30. On September 18, 2020, Comair's creditors approved its business rescue plan (as amended, the "Rescue Plan"), but the proceeding remained open while the BRPs continued to assess whether Comair had a reasonable likelihood of being rehabilitated. *See* Motion ¶ 6; Second Harduth Decl. ¶ 10.

Comair Chapter 15 Case

On February 16, 2021 (the "Petition Date"), the BRPs filed the Verified Petition in this Court seeking recognition of the Business Rescue Proceeding as a foreign main proceeding and the BRPs as the foreign representatives of Comair. On April 13, 2021, the Court entered the Recognition Order and granted recognition to the Business Rescue Proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code. *See id.* ¶¶ 1–2. In doing so, the Court found that (i) the Business Rescue Proceeding was a foreign main proceeding pursuant to section 1502(4) of the Bankruptcy Code and (ii) the BRPs were "foreign representatives" of Comair within the meaning of section 101(24) of the Bankruptcy Code. *See* Recognition Order ¶¶ G, J-L.

On July 19, 2021, the BRPs filed a motion seeking entry of an order permitting them to conduct discovery of Boeing pursuant to section 1521(a)(4) of the Bankruptcy Code.[14] To obtain relief under section 1521(a), a foreign representative must demonstrate that the relief is "necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). The BRPs contended that they required discovery of Boeing to assess (a) the claims and causes of action that the Debtor might have against Boeing in connection with the Purchase Agreement, (b) the Debtor's rights (if any) to be compensated for any damages from the fund created as part of Boeing's settlement with the Department of Justice relating to its manufacture of 737 MAX 8 aircraft, and (c) the extent of the Debtor's claims against Boeing for the repayment of deposits and other amounts paid by Comair pursuant to the Purchase Agreement. *See* Discovery Motion ¶ 20. They contended that the causes of actions Comair might have against Boeing are potentially significant property interests of Comair.[15] They asserted that discovery against Boeing was necessary to assess the validity, strength, and magnitude of those potential claims, and that it would enable them to fulfill their statutory duties under South African law to determine whether Comair has a reasonable prospect of being rescued. *See* Reply ISO Discovery Motion ¶ 13.

---

[14]    *See Motion for an Order Permitting the Foreign Representatives to Conduct Discovery Pursuant to 11 U.S.C. § 1521 and Fed. R. Bankr. P. 2004*, ECF No. 13 (the "Discovery Motion").

[15]    *See Reply in Further Support of Motion for an Order Permitting the Foreign Representatives to Conduct Discovery Pursuant to 11 U.S.C. § 1521 and Fed. R. Bankr. P. 2004*, ECF No. 24 (the "Reply ISO Discovery Motion") ¶ 2.

The Court granted the Discovery Motion and entered the "Discovery Order."[16] In doing so, the Court found that the discovery sought by the BRPs was "plainly necessary to protect Comair's assets." Discovery Order at 24. The Court determined that the discovery sought "qualif[ies] as the taking of evidence concerning the debtor's assets under § 1521(a)(4)" and that "broad discovery under section 1521 would promot[e] a significant chapter 15 objective by permitting the [BRPs] to comply with [his] duties" to "investigate the company's affairs, business property, and financial situation" in accordance with the South African Companies Act § 141. *See id.* at 19–20.[17]

Comair Terminates Business Rescue Proceeding
and Commences Provisional Liquidation

Section 141(2) of the Companies Act requires a practitioner to "apply to the court for an order discontinuing the business rescue proceedings and placing the Respondent into liquidation" once it concludes that "there is no reasonable prospect for the Respondent to be rescued." Companies Act § 141(2). South African liquidations are conducted in the High Court and are governed by the Insolvency Act of 1936 ("Insolvency Act") and the Companies Act 61 of 1973 ("1973 Companies Act").[18]

---

[16]    *See Memorandum Decision and Order Granting the Foreign Representative's Motion for an Order Permitting the Foreign Representative to Conduct Discovery Pursuant to 11 U.S.C. § 1521 and Fed. R. Bankr. P. 2004*, ECF No. 34 (the "Discovery Order").

[17]    Boeing appealed this order to the United States District Court in November 2021. *Notice of Appeal*, ECF No. 35. In January 2023, the district court denied leave to appeal and dismissed the appeal for lack of jurisdiction, reasoning that the discovery order was not an appealable final order, since it did not materially advance the termination of the litigation, nor were there exceptional circumstances warranting leave to appeal. *District Court Order*, ECF No. 85.

[18]    The 2008 Companies Act was enacted to partially repeal and replace the 1973 Companies Act. *See* 2008 Companies Act, § 224. However, instead of re-writing the existing law on liquidating an insolvent company, the 2008 Companies Act simply incorporated and preserved the provisions in the 1973 Companies Act that govern liquidations. Harduth Supp. Decl. ¶ 4; (citing 2008 Companies Act, Schedule 5, § 9 ("Chapter 14 of [the 1973 Companies] Act continues to apply with respect to the winding-up and liquidation of companies *under this Act*, as if that Act had not been repealed.")). As counsel explained:

> Chapter 14 of the 1973 Companies Act in turn incorporates by specific reference certain provisions of the Insolvency Act 24 of 1936 and at section 339 of the 1973 Companies Act generally provides "[i]n the winding-up of a company unable to pay its debts the provisions of the law relating to

9

> When an application to place a company into a wind up or liquidation is made, the applicant must serve a copy on various parties in interest, as required under section 346 of the 1973 Companies Act. The High Court may grant or dismiss any application, or adjourn the hearing thereof, conditionally or unconditionally, or make any interim order or any other order it may deem just, subject to the criteria set forth in section 347 of the 1973 Companies Act. When the High Court grants a wind up application on a conditional or interim basis, the company is placed into a provisional liquidation, and a return date is set for parties in interest to show cause as to why the company should not be placed into a final liquidation (a "Final Liquidation Order"). Notwithstanding this process, the wind-up proceeding is deemed to commence at the time of the presentation to the Court of the application for the winding-up. *See* 1973 Companies Act § 348.

Second Harduth Decl. ¶ 15. "By definition, a provisional liquidation is an interim proceeding that, upon entry of a Final Liquidation Order, becomes a final liquidation." *Id.* ¶ 16. However, the High Court can extend the return date for determining whether to place a company into final liquidation for a number of reasons. *Id.* For example, "section 155 of the Companies Act permits a provisional liquidator to propose a scheme of arrangement, which is a court-approved restructuring agreement between a company and its stakeholders," and upon the proposal of a scheme of arrangement, "the High Court will typically extend the return date for placing a company into final liquidation."[19] *Id.* ¶ 16.

When a company is placed into a provisional liquidation, the Master of the High Court appoints one or more provisional liquidators in accordance with the policy for appointments set by the Minister of Justice, which appointment is subject to the High Court's oversight. Second Haruth

---

insolvency shall, in so far as they are applicable, be applied *mutatis mutandis* in respect of any matter not specially provided for by this [1973 Companies] Act." In light of these provisions, business rescue proceedings and provisional liquidations are effectively governed by the same statutory scheme.

*Id.* (footnote omitted).

[19]    *See In re Cell C Proprietary Ltd.*, 571 B.R. 542, 546–47 (Bankr. S.D.N.Y. 2017) (discussing this provision of the Companies Act).

Decl. ¶ 17 (citing 1973 Companies Act §§ 368, 373). "Upon appointment, the property of the company is deemed to be in the custody and under the control of the provisional liquidator(s)." *Id.* (citing 1973 Companies Act § 361). Once the High Court enters a Final Liquidation Order, the Master of the High Court must summon a meeting of creditors, which allows creditors to lodge their claims against the company and nominate final liquidators—ordinarily, the provisional liquidators are nominated as final liquidators. *Id.* ¶ 18. Liquidators carry the duty to recover and reduce into possession all the assets and property of the company to sell those assets, and to distribute the proceeds to creditors in accordance with their statutory order of preference. *Id.* ¶ 19 (citing 1973 Companies Act §§ 391, 409; Insolvency Act §§ 95–104). "Subject to satisfaction of certain statutory conditions, liquidators also have the power to bring and defend litigation in the name and on behalf of the company and to take such other measures for the protection and better administration of the affairs and property of the company as the liquidators may deem necessary." *Id.* (citing 1973 Companies Act § 386).

Faced with a resurgence of COVID-19-related restrictions, rising oil prices, and a lack of financing necessary to maintain Comair as a going concern, the BRPs determined that there was no reasonable prospect for Comair to be rescued. *See* Motion ¶¶ 8–12; Second Harduth Decl. ¶¶ 10–12. On June 9, 2022, the BRPs filed an application with the High Court pursuant to section 141(2) of the Companies Act, seeking an order discontinuing the Business Rescue Proceeding and commencing a liquidation proceeding with respect to Comair (the "Winding Up Application").[20] *See* Motion ¶ 13; Second Harduth Decl. ¶ 12. On June 14, 2022, the High Court entered a provisional order (the "Provisional Liquidation Order") that granted the Winding Up Application,

---

[20]    A copy of the Winding Up Application is annexed to the Second Harduth Declaration as Exhibit B.

discontinued the Business Rescue Proceeding, and placed Comair into a provisional liquidation (the "Provisional Liquidation"). *See* Motion ¶ 15; Second Harduth Decl. ¶ 20.[21] On June 17, 2022, the Master of the High Court appointed the JPLs as the provisional liquidators of Comair. *See* Second Harduth Decl. ¶ 21.[22] On June 23, 2022, the High Court certified the appointment of the JPLs. *See id.*  On June 23, 2022, the JPLs filed an application (the "JPL Powers Application")[23] with the High Court, seeking expanded powers during the Provisional Liquidation, including the powers to:

(a) institute legal proceedings on behalf of the Comair estate;

(b) move this Court to amend the Recognition Order to recognize the JPLs as the new foreign representatives;

(c) notify this Court that the JPLs have ratified the BRPs' decision to obtain discovery from Boeing and to seek to be substituted for the BRPs with respect to the pending discovery dispute with Boeing; and

(d) take all other and further actions as the JPLs may deem necessary in furtherance of the authority being conferred on a foreign representative under chapter 15 of the Bankruptcy Code.

*See* Motion ¶ 17; Second Harduth Decl. ¶ 22. On June 28, 2022, the High Court granted the JPL Powers Application.[24] In it, as relevant, the High Court granted the JPLs the authority:

(i)    To institute legal proceedings as may be necessary on behalf of the estate, particularly in regard to the following:

---

[21]    A copy of the Provisional Liquidation Order is annexed to the Second Harduth Declaration as Exhibit E.

[22]    For clarity, none of the BRPs (i.e., neither Ferguson, Collyer, nor Hablutzel) was appointed as a JPL.

[23]    The JPLs did not provide a copy of the JPL Powers Application.

[24]    A copy of the order granting the JPL Powers Application (the "JPL Powers Order") is annexed to the Harduth Declaration as Exhibit G.

    a.  declaratory relief in respect of the assets of the estate;

    b.  interdict proceedings against companies and individuals on behalf of the estate;

    c.  any further legal proceedings necessary in the administration of the estate;

    d.  an amendment of this Court's order recognizing the South African Proceedings as a Foreign Main Proceeding, with the applicants as provisional liquidators being appointed as the new foreign representative;

    e.  notifying the New York Bankruptcy Court that the applicants as the new foreign representative have ratified the joint business rescue practitioners' decision to obtain discovery from Boeing and that the applicants be substituted for the former foreign representatives in all capacities;

    f.  authorizing the applicants, as new foreign representative, to take any actions as deemed necessary in furtherance of the authority being conferred on the foreign representative;

    (ii)  To defend or oppose legal proceedings as may be necessary on behalf of the estate;

    (iii)  To continue and/or settle any legal proceedings of whatever nature, whether already instituted or which may be instituted on behalf of or against the estate, on such terms as the applicant in their discretion may deem fit; and

    (iv)  To employ any individuals or legal entity to investigate the trade, dealings and affairs of Comair and to value its assets.

*See* JPL Powers Order ¶¶ 3.1–3.11; *see also* Motion ¶ 18; Second Harduth Decl. ¶ 22.

## The Motion

In support of the Motion, the JPLs assert that the BRPs were Comair's "foreign representatives" through June 17, 2022, and effective June 17, 2022, the JPLs are Comair's "foreign representatives". They contend that the Business Rescue Proceeding was a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code, that it was pending in South Africa, the country where Comair's center of main interests is located, and therefore was a foreign proceeding pursuant to section 1502(4) of the Bankruptcy Code and was entitled to

recognition as a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code. Likewise, they say that the Business Rescue Proceeding was converted to the Provisional Liquidation (together with the Business Rescue Proceedings, the "South African Proceedings") as of June 14, 2022, that it is still pending in South Africa, the country where Comair's center of main interests is located, and therefore is a foreign main proceeding pursuant to section 1502(4) of the Bankruptcy Code and is entitled to recognition as a foreign main proceeding pursuant to 1517(b)(1) of the Bankruptcy Code. They assert that, pursuant to sections 1517(d) and 1522(c), the JPLs are entitled to all of the relief afforded under section 1520 of the Bankruptcy Code and the additional relief requested and provided under section 1521, subject to certain modifications. Motion ¶¶ 22–30. Pursuant to the Motion, the JPLs seek an order that, among other things, (i) recognizes the South African Proceedings as a foreign main proceeding pursuant to section 1517(a) and (b)(1) of the Bankruptcy Code; (ii) authorizes the JPLs to intervene in any proceeding in a State or Federal court in the United States in which Comair is a party; and (iii) deems the JPLs to be substituted for the BRPs pursuant to Rule 25(c) in all pending contested matters, including, without limitation, matters arising under the Discovery Order. *Id.* at 13–14.

Section 1517(d) permits the "modification . . . of recognition if it is shown that the grounds for granting it . . . have ceased to exist." 11 U.S.C. § 1517(d). Section 1522(c) provides that the court may "modify or terminate" relief granted by it under sections 1519 or 1521 of the Bankruptcy Code. 11 U.S.C. § 1522(c). The JPLs contend that Courts frequently grant relief under these sections to account for a change in the state of the foreign proceeding. Motion ¶ 22. They say that relief under those sections is necessary to reflect the change in the nature of Comair's South African Proceedings, i.e., that the Business Rescue Proceeding has been converted to a Provisional Liquidation and the BRPs have been replaced with the JPLs. *Id.* ¶ 23. They also assert that such

relief is warranted because the Provisional Liquidation qualifies as a foreign main proceeding under the Bankruptcy Code in its own right, and the JPLs qualify as foreign representatives under the Bankruptcy Code. *Id.*

Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). The JPLs contend that they are successors to the BRPs, who during the Business Rescue Proceeding were "charged with investigating and administering Comair's assets." They say that upon conversion of the Business Rescue Proceeding to the Provisional Liquidation, the JPLs "replaced the Business Rescue Practitioners and assumed the role of recovering and administering Comair's assets and affairs." Motion ¶ 34; *see* Second Harduth Decl. ¶ 19. Accordingly, the JPLs assert that they should be substituted for the BRPs in all respects. Motion ¶ 34.

Boeing objects to the Motion. Briefly, and in substance, it asserts that the JPLs misplace their reliance on sections 1517(d) and 1522(c) of the Bankruptcy Code. It complains that through the Motion, the JPLs seek to initiate a new chapter 15 proceeding "under the guise of a purported 'amendment' to the [Recognition Order] without even attempting to satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules." Obj. ¶ 1. It says that because the Business Rescue Proceeding recognized by this Court pursuant to chapter 15 was terminated well before the JPLs filed the Motion, and the BRPs previously recognized as foreign representatives no longer have any authority to act for Comair, the relief the BRPs had pursued on behalf of reorganized Comair (including protecting Comair's business as a going concern and implementing its Plan) in this chapter 15 case is at an end.

15

Indeed, Boeing correctly notes that the Provisional Liquidation and Business Rescue Proceeding are distinct matters with different case numbers in the High Court, different goals and supervised by different people. Obj. ¶ 27. But it further contends that the law does not permit the JPLs simply to "swap" the new Provisional Liquidation into this Chapter 15 Case. Obj. ¶¶ 26–27. Essentially, it asserts that before the Court can recognize the Provisional Liquidation as a foreign proceeding under the Bankruptcy Code, two things must happen. First, the BRPs must file a final report with the Court pursuant to Bankruptcy Rule 5009(c). If no objection to the report has been filed 30 days after the BRPs file a certificate that notice of the report has been provided to interested parties, there shall be a presumption that the case has been fully administered and the Court would close the Chapter 15 Case. Obj. ¶ 24. Boeing maintains that the BRPs must file a final report because "their roles are indisputably complete," and they have therefore lost their authority to act for Comair. *Id.* ¶¶ 16, 23, 26, 30. Second, the JPLs must successfully petition the Court for recognition of the Provisional Liquidation under chapter 15 of the Bankruptcy Code. It contends that if the JPLs successfully do so, they can thereafter seek leave to conduct discovery of Boeing. *Id.* ¶¶ 35–38.

Boeing argues that any prior justification for relief in this Chapter 15 Case, including with respect to the Discovery Motion, no longer applies in the face of the Provisional Liquidation. *Id.* ¶ 25. It maintains that the JPLs have not demonstrated that any chapter 15 case is necessary at all, and that there is no evidence that the Debtor needs a chapter 15 case to protect its business, assets, any plan, or the now-pending liquidation. *Id.* ¶ 25. It argues that the Court should require the JPLs to commence a new chapter 15 case and make a showing that the provisional liquidation complies with the statutory and other requirements of chapter 15. *Id.* ¶ 25.

The Court considers those matters below.

16

### Discussion

Section 1517(d) states as follows:

> The provisions of this subchapter do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition. A case under this chapter may be closed in the manner prescribed under section 350.

11 U.S.C. § 1517(d). Relief under section 1517(d) is discretionary. *See In re Loy*, 448 B.R. 420, 438 (Bankr. E.D. Va. 2011) ("The actual language dictates that the subchapter's provisions 'do not prevent modification or termination,' which indicates that, although revisiting a recognition determination is not mandatory, it is within the Court's discretion to do so." (quoting 11 U.S.C. § 1517(d))). However, the statute limits the Court's exercise of such discretion to cases in which: (1) the basis for recognition was flawed in some way, or (2) where the grounds for recognition have ceased to exist. *See In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 107 (Bankr. S.D.N.Y. 2012); *see also In re Loy*, 448 B.R. at 338 ( "Section 1517(d) provides a two part disjunctive test. A Court may modify or terminate recognition if (1) the grounds for granting recognition 'were fully or partially lacking' or (2) the grounds for granting recognition 'have ceased to exist.'" (quoting 11 U.S.C. § 1517(d))). In exercising that discretion, the Court must "give due weight to possible prejudice to parties that have relied on the order granting recognition." 11 U.S.C. § 1517(d).

The Business Rescue Proceeding has been terminated in favor of the Provisional Liquidation. *See* Second Harduth Decl. ¶¶ 12–13; Obj. ¶¶ 16, 23. The JPLs contend that the Comair insolvency proceeding—the South African Proceeding—is uninterrupted, and the business rescue proceeding has only been converted into an insolvency proceeding. Supp. Decl. Resp. at 4–5. Essentially, they assert that, in applying sections 1517(d) and 1522(c) of the Bankruptcy Code,

there is no difference between (i) an order that terminates a reorganization and initiates a liquidation, and (ii) an order that converts a reorganization into a liquidation. *Id.* Accordingly, the JPLs assert that the South African Provisional Liquidation is the same proceeding, overseen by the same High Court, as the business rescue proceeding. *See id.* The only difference is that the conversion from a reorganization to a liquidation necessitated replacing business rescue professionals with provisional liquidators, effecting a change in the foreign representative in this chapter 15 proceeding. *See id.*

By so contending, the JPLs maintain and the Court finds that there has been no change in the identity of the foreign proceeding. Fundamentally, Comair is still in an insolvency proceeding in South Africa under the Companies Act. The High Court had jurisdiction over Comair during the Business Rescue Proceeding, and it retains jurisdiction over Comair throughout the pendency of the Provisional Liquidation. As now relevant, the only change affecting this Chapter 15 Case is that the High Court has authorized a new party to represent Comair in the South African liquidation, thus effecting a change in the foreign representative. The Motion asks the Court to recognize that change. Comair remains under the control of court-appointed fiduciaries. The High Court simply replaced the reorganizational fiduciaries with liquidators. This is common in the United States and globally, as insolvency regimes that allow for reorganization must (as a practical matter) include a mechanism for liquidating debtor companies that unsuccessfully attempt such a reorganization.

"Chapter 15 incorporates into U.S. bankruptcy law the Model Law on Cross-Border Insolvency (the "Model Law"), promulgated in 1997 by the United Nations Commission on

18

International Trade Law." *In re Black Gold S.A.R.L.*, 635 B.R. 517, 525 (B.A.P. 9th Cir. 2022). [25]

The legislative history to section 1517 confirms that the provision "closely tracks article 17 of the

Model Law, with a few exceptions." *In re Bear Stearns High-Grade Structured Credit Strategies*

*Master Fund, Ltd.*, 389 B.R. 325, 332 (S.D.N.Y. 2008) (quoting House Report at 113). [26] Section

1517(d) is the U.S. version of Article 17(4) of the Model Law. The latter states that:

> The provisions of articles 15, 16, 17 and 18 [governing recognition of a foreign
> proceeding] do not prevent modification or termination of recognition if it is shown
> that the grounds for granting it were fully or partially lacking or have ceased to
> exist.

Model Law, Art. 17(4). "Congress has specifically pointed to the [UNCITRAL Guide][27] as

providing historical and interpretive guidance to the meaning and purpose of the provisions in

chapter 15." *In re Black Gold S.A.R.L.*, 635 B.R. at 525 (citing House Report at 106 n.101). As

relevant, the UNCITRAL Guide states:

> Modification or termination of the recognition decision may be a consequence of a
> change of circumstances after the decision on recognition, for instance, if the
> recognized foreign proceeding has been terminated or its nature has changed (e.g.
> a reorganization proceeding might be converted into a liquidation proceeding) or if
> the status of the foreign representative's appointment has changed or the
> appointment has been terminated.

---

[25]    *See also* U.N. Comm'n on Int'l Trade. L., UNCITRAL Model Law on Cross-Border Insolvency with Guide to
Enactment and Interpretation, U.N. Sales No. E.14.V.2 (2014), https://uncitral.un.org/sites/uncitral.un.org/files/
media-documents/uncitral/en/1997-model-law-insol-2013-guide-enactment-e.pdf (the "UNCITRAL Guide").

[26]    Chapter 15 of the Bankruptcy Code, which essentially incorporates into U.S. bankruptcy law the Model Law,
provides a "framework for recognizing and giving effect to foreign insolvency proceedings." *In re Rede Energia S.A.*,
515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014); *see also* H.R. Rep. No. 109-31(I) at 105 (2005), 2005 U.S.C.C.A.N. 88, 169
(hereinafter, the "House Report") ("Section 801 introduces chapter 15 to the Bankruptcy Code, which is the Model
Law on Cross-Border Insolvency . . . promulgated by the United Nations Commission on International Trade Law . . .
at its Thirtieth Session on May 12-30, 1997."). "The purpose of chapter 15 is to encourage cooperation between
domestic and foreign courts, increase legal certainty, promote fairness and efficiency, protect and maximize value and
facilitate the rescue of financially troubled businesses." *In re Oversight and Control Comm'n of Avanzit, S.A.*, 385
B.R. 525, 534 (Bankr. S.D.N.Y. 2008); *see also* 11 U.S.C. § 1501(a); House Report at 105.

[27]    *Id.*

*See* UNCITRAL Guide § 165. "Section 1517(d) allow[s] courts to adjust their rulings based on changed circumstances, which exhibit[s] 'a policy that the recognition process remain flexible, taking into account the actual facts relevant to the court's decision rather than setting an arbitrary determination point.'" *In re Oi Brasil Holdings*, 578 B.R. at 203 (quoting *In re British Am. Ins. Co.*, 425 B.R. 884 (Bankr. D. Fla. 2010)); *see In re Loy*, 448 B.R. at 440 ("[R]ecognition determinations are malleable, and, as facts warrant in a specific case, the court may revisit recognition."); *see also In re Ernst & Young, Inc.*, 383 B.R. 773, 781 (Bankr. D. Colo. 2008) (concluding that a recognition determination "appears to be a summary determination" and "[s]hould it be determined in the Receivership Proceeding that KDI and KD/CO are two independent entities which should be liquidated separately, chapter 15 of the Bankruptcy Code allows the recognition determination to be modified or terminated in the future" (citing 11 U.S.C. § 1517(d))).

Under the prospective prong of section 1517(d), recognition may be modified or terminated if the grounds for granting recognition "have ceased to exist." 11 U.S.C. § 1517(d). "To assess this question, the Court must examine what has changed since entry of the Prior Recognition Order." *In re Oi Brasil Holdings*, 578 B.R. at 222. "In order to modify or terminate recognition, the reviewing court that evaluates the presence or absence of either one of those prongs may consider new evidence and it is not limited to considering only the evidence that was or ought to have been available at the time the court granted recognition." *In re Loy*, 448 B.R. at 439. No party disputes that the Business Rescue Proceeding recognized by the Court in the Recognition Order has been discontinued and no longer exists. *See* Second Harduth Decl. ¶¶ 12–13; Obj. ¶¶ 16, 23.

Section 132(2)(a)(ii) of the Companies Act provides that "[b]usiness rescue proceedings end when . . . the court . . . has converted the proceedings to liquidation proceedings," and section 141(2) of the Companies Act enables a business rescue practitioner to "apply to the court for an order discontinuing the business rescue proceeding and placing the company into liquidation." The Court agrees with the JPLs' contention that there is only a semantic difference between (i) the "termination" of a reorganization in favor of a liquidation, and (ii) the "conversion" of a reorganization into a liquidation. In either case, the two forms of the insolvency are coterminous—the reorganization ends where the liquidation begins. This accords with the legislative history of section 1517(d), which confirms that section 1517 closely tracks article 17 of the Model Law. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. at 332; House Report at 113. Moreover, Congress relied on the UNCITRAL Guide for interpretive guidance in reviewing the model law. *In re Black Gold S.A.R.L.*, 635 B.R. at 525 (citing House Report at 106 n.101). In turn, the UNCITRAL Guide explicitly contemplates modification or termination of a recognition order where "a reorganization proceeding might be converted into a liquidation proceeding," or where "the status of the foreign representative's appointment has changed." UNCITRAL Guide § 165.

The JPLs contend that bankruptcy courts frequently grant relief under §§ 1517(d) and 1522(c) "to account for a change in status of a foreign proceeding." Reply ¶ 22 (citing Amended Order Recognizing Foreign Main Proceeding, *In re Glitnir Banki HF.*, No. 08-14757 (Bankr. S.D.N.Y. Mar. 18, 2011), ECF No. 73; Amended Order Recognizing Foreign Main Proceeding, *In re Landsbanki Islands HF.*, No. 08-14921 (Bankr. S.D.N.Y. Jan. 14, 2011), ECF No. 41). In those cases, certain Icelandic financial institutions (the "Icelandic Banks") were being operated under the control of the Financial Supervisory Authority of Iceland (the "FME") and through

separate Resolution Committees formed by the FME under Icelandic law, that replaced each bank's board of directors and was headed by an individual chairperson. The Resolution Committees commenced "Moratorium" proceedings for their respective banks, under the Icelandic Bankruptcy Act (the "Bankruptcy Act") and subject to the exclusive jurisdiction of the District Court of Reykjavík (the "Icelandic District Court"). Under Icelandic law, a "Moratorium" is a reorganization measure that is intended to preserve the financial condition of the subject entity by allowing suspension of payments, a stay of creditor enforcement actions, and the imposition of a claims process under the priority rules of the Bankruptcy Act.[28]

Both Icelandic Banks filed chapter 15 petitions in this Court to give effect to the Moratorium proceedings. In both cases, this Court recognized the proceedings as foreign main proceedings and each chairperson of the Resolution Committee as the respective debtor's foreign representative.[29] After the entry of the recognition orders in both cases, the Icelandic law was amended in two ways. The 2009 Amendment granted the Icelandic District Court the power to appoint a "Winding-up Board" for a bank in a Moratorium proceeding upon the written request by the Resolution Committee of such bank. The Winding-up Board is subject to the exclusive jurisdiction of the Icelandic District Court and is entrusted to handle all aspects of the banks reorganization and winding up that are not entrusted to the Resolution Committee. *Landsbanki* Motion ¶ 9. It also provided the upon the termination of the Moratorium proceedings, the

---

[28]    Notice of Substantial Change Pursuant to 11 U.S.C. § 1518 and Motion to Amend Order Recognizing Foreign Main Proceeding Pursuant to 11 U.S.C. § 1522(c), *In re Landsbanki Islands HF.*, No. 08-14921 (Bankr. S.D.N.Y. Jan. 14, 2011), ECF No. 36 ("*Landsbanki* Motion") ¶ 18.

[29]    *See* Amended Order Recognizing Foreign Main Proceeding of Landsbanki Íslands HF., and Granting Permanent Injunction, *In re Landsbanki Islands HF.*, No. 08-14921 (Bankr. S.D.N.Y. Jan. 14, 2011), ECF No. 41 ("*Landsbanki* Order"); Amended Order Recognizing Foreign Main Proceeding, *In re Glitnir Banki HF.*, No. 08-14757 (Bankr. S.D.N.Y. Mar. 18, 2011).

Resolution Committee was divested of any power over the banks in favor of the Winding-up Board.

Among other things, the 2010 Amendments mandate that upon the conclusion of an authorized Moratorium, the subject bank must be placed in winding-up proceedings—i.e., liquidation proceedings—subject to the control of the Winding-up Board, and pursuant to an order of the Icelandic District Court. *Id.* ¶ 17. Prior to the amendment, at the conclusion of the Moratorium, a financial institution automatically entered winding-up proceedings, without further order of the Icelandic District Court. The amendment was intended to clarify the involvement of Icelandic courts in the winding-up proceedings, thereby ensuring that the reorganization and winding-up proceedings of Icelandic financial institutions satisfy the requirements of European Directive 2001/24/EC (the "Directive"). *Id.* In both cases, the banks were placed into liquidation proceedings by order of the Icelandic District Court.

The *Glitnir* and *Landisbank* Winding-up Boards, both styling themselves as the "foreign representatives" of the respective banks, filed separate motions under section 1522(c) of the Bankruptcy Code. In so doing, they sought to amend the respective recognition orders to recognize the Winding-up Boards as the "foreign representatives" under section 101(24) of the Bankruptcy Code, and the Icelandic Proceedings as foreign main proceedings under section 1517 of the Bankruptcy Code. In each case, the Court granted the requested relief under section 1522(c). In each case, the Court referred to the respective Icelandic insolvency as one proceeding that was governed by Icelandic law, finding that each respective Winding-up Board was the duly appointed foreign representative under section 101(24).

Here, the JPLs rely on *Glitnir* and *Landsbanki* to say that bankruptcy courts "frequently grant relief" under sections 1522(c) and 1517(d) "to account for a change in status of a foreign proceeding, such as when a new foreign representative has been appointed by the foreign court." Motion ¶ 22. However, these cases relied only on section 1522(c) for the authority to modify a recognition order to reflect the changes in those proceedings. *Landsbanki* Order ¶ M; *Glitnir* Order ¶ M. Accordingly, the court will analyze only those cases' application of section 1522(c).

The relevant issue is whether the South African reorganization proceedings and the subsequent liquidation proceedings constitute the same "foreign proceeding," as defined in section 101(23) of the Bankruptcy Code, that was recognized in this Court's Recognition Order. A foreign proceeding is "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). A foreign representative is "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such a foreign proceeding." *Id.* § 101(24). Section 1522(c) permits a bankruptcy court to, "at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief." *Id.* § 1522(c). Absent an order to the contrary, section 1519 relief "terminates when the petition for recognition is granted." *Id.* § 1519(b). Upon recognition of a foreign proceeding, a bankruptcy court has broad authority under § 1521 to grant various forms of relief relating to the prosecution of a chapter 15 case, which includes "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations

or liabilities." 11 U.S.C. § 1521(a)(4). Following entry of a recognition order, section 1521 is a key provision under which a foreign representative may seek relief. The JPLs seek to avail themselves of this authority on the ground that they are the foreign representative appointed by the High Court in the foreign proceeding that this Court has already recognized. *See* Motion ¶¶ 1, 7, 22. They also say that section 1522 permits the court to modify relief already granted under section 1521, i.e., the Discovery Order, to allow them to continue discovery that the BRPs started, since the High Court has now made them the foreign representative.[30] Transcript at 10:10–11:7; *see* Second Harduth Decl. ¶ 22. Boeing says that, because the Provisional Liquidation is a new proceeding that this Court has not recognized, the JPLs should not be recognized as the foreign representative in this case, and thus they should not be extended section 1521 relief previously granted to the BRPs. Obj. ¶¶ 26–34; Supp. Obj. ¶¶ 6–10. Thus, the question of whether the JPLs may conduct discovery hinges on whether they were appointed in the same proceeding as the BRPs had been. The Court finds that the South African business rescue proceeding and the liquidation are parts of one foreign proceeding.

Boeing says that the South African liquidation is distinct from the reorganization because "Comair's provisional liquidation is a new case with a different case number than its business rescue proceeding," that the JPLs are distinct from the BRPs, the liquidation is governed by the 1973 Companies Act and the business rescue was governed by the 2008 Companies Act. Supp. Obj. ¶¶ 6–8. Boeing says that these are different proceedings because the reorganization has formally ended. *Id.* ¶ 9. Moreover, Boeing says that the reorganization proceeding and the

---

[30] The JPLs explained their position in detail at the hearing held on this motion. *Transcript of Hearing Held on 7/29/2022*, ECF No. 69 (the "Transcript") at 10:10–19:5.

liquidation proceeding "serve fundamentally different purposes" because a business rescue proceeding aims "to *avoid* liquidation or generate returns in *excess* of liquidation." *Id.* ¶ 10.

Boeing attempts to distinguish the Icelandic cases, pointing out that the governing law had been amended, and so the orders in those chapter 15 cases "were sought out of an abundance of caution to accommodate changes in substantive Icelandic law governing an already-recognized [sic] foreign proceeding; indeed, both motions explicitly noted that the relevant legislative amendments in Iceland were automatically afforded recognition under the terms of the existing recognition order." Objection ¶ 32. In reply, the JPLs say that this is "a distinction without a difference," explaining that the Icelandic cases "stand for the proposition that the Bankruptcy Code authorizes the court to amend a recognition order when there has been a substantial change in the nature of the foreign proceeding, which is what has happened here." Reply at 5 n.5. The Court agrees.

Boeing is correct that the Icelandic cases followed a series of legislative amendments, but that is not particularly germane to the treatment of those cases by U.S. bankruptcy courts. It is the substance of those amendments that is of particular concern here. The 2009 amendment created an automatic mechanism by which the reorganizational moratoria would automatically convert to liquidation proceedings. Crucially, the Icelandic Parliament changed that procedural mechanism in 2010, instituting a process by which the reorganizational committee and the winding-up board would apply for an order to end the moratorium and begin the winding-up, upon entry of which, the moratorium will have "concluded." *Glitnir* Motion ¶ 14. That is nearly identical to the mechanism used by the High Court in South Africa, whereby the BRPs apply to the High Court for an order concluding the business rescue proceeding and beginning the liquidation, at which point the JPLs are appointed. Ironically, Iceland enacted the 2010 amendment that required a court

order to transition to liquidation specifically to ensure recognition by other countries, in accordance with Directive 2001/24/EC.[31] Certainly, it is helpful in this case to have an order from the South African High Court explaining the transition from a business rescue to a liquidation. Thus, the court rejects Boeing's argument that the formal end of the Business Rescue Proceeding distinguishes it from the liquidation for the purposes of chapter 15 recognition—the similar administrative conclusion effected by the foreign orders initiating the Icelandic liquidations did not prevent this Court from treating the already recognized moratoria and their respective liquidations as identical, and the analogous South African procedure here warrants the same treatment.

The Court certainly agrees with Boeing's premise that the Icelandic cases were filed "in an abundance of caution" because the change in legal status was "automatically afforded recognition" under chapter 15. Objection ¶ 32. However, this belies Boeing's whole argument—if the analogous changes to the Icelandic cases were automatically afforded recognition, as Boeing maintains, then the motion in this case should be equally superfluous. As aforementioned, it is not important that Iceland had only recently enacted the amendments that adopted essentially the same procedural mechanism as South Africa—new or old, the important point is that this Court approved of that mechanism in *Glitnir* and *Landsbanki*.

---

[31]   *See* Second Notice of Substantial Change and Status Report of Foreign Representative Regarding Foreign Main Proceeding Pursuant to 11 U.S.C. Section 1518, *In re Glitnir Banki HF.*, No. 08-14757 (Bankr. S.D.N.Y. Mar. 18, 2011), ECF No. 65 ¶ 11 (explaining that the Paris Court of Appeal held that the 2009 amendment's provisions "did not implement insolvency procedures that qualified for recognition in France under Directive 2001/24/EC which provides the framework for recognition of reorganization measures or winding up procedures implemented by administrative or judicial authorities with respect to a credit institution throughout the European Economic Area"). The parties have not briefed this issue, but the Court notes that penalizing a foreign jurisdiction for converting a reorganization to a liquidation by court order (as opposed to automatically) might create an unnecessary tension between chapter 15 and European law.

As to Boeing's point that reorganizations and liquidations serve different ends, this is unavailing. Fundamentally, this case involves a functional transfer of controlling interest in Comair from the BRPs to the JPLs. *See* Peter N. Levenberg SC, *Directors' Liability and Shareholder Remedies in South African Companies—Evaluating Foreign Investor Risk*, 26 Tul. J. Int'l & Comp. L. 1, 55–59 (Winter 2017) (explaining the role of a liquidator in South African insolvency proceedings). While a South African business rescue proceeding is analogous to an American chapter 11 case, *id.* at 13, and a liquidation is comparable to a chapter 7 case, *id.* at 55–59, South African law administratively creates a new proceeding when it appoints a liquidator or liquidators (who fills the same role as an American chapter 7 trustee), *id.* at 41 n.260. The deliberately flexible nature of chapter 15 is designed to accommodate exactly this kind of minor administrative difference among international insolvency proceedings. *See In re Oi Brasil Holdings*, 578 B.R. at 203.

Additionally, the further interruption of the discovery process in this case would only "add duration, costs, and complexity" to this action. *Advanced Mktg. Grp.*, 269 F.R.D. at 359. The Court finds that there is no merit to Boeing's view that the Discovery Order was predicated only on the BRPs' interests in reorganization. *See* Obj. ¶¶ 2, 11, 13. Rather, the Discovery Order was intended, inter alia, to allow the parties to ascertain what claims and related assets Comair may have. Thus, as the clear successor to the BRPs, the JPLs are equally entitled to engage in discovery for the furtherance of Comair's economic interests. *See Advanced Mktg. Grp.*, 269 F.R.D. at 359.

Whether the Provisional Liquidation is Entitled to Recognition
Under Section 1517(a) of the Bankruptcy Code

In granting the Motion, the Court conducts a fresh analysis of the Provisional Liquidation to ensure that it complies with chapter 15 in its current state. Section 1517 governs a request for recognition of a foreign proceeding. It provides, in relevant part:

> Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
>
> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). Section 1506 provides an exception to recognition on the basis of U.S. public policy. It states:

> Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States.

*Id.* § 1506. Under this framework, subject to the public policy exception under section 1506, recognition of a foreign proceeding is "mandatory" where the requirements of section 1517(a) are met. *In re Millard*, 501 B.R. 644, 653–54 (Bankr. S.D.N.Y. 2013) ("[S]ection 1517(a) imposes a mandatory requirement, in the first instance, for recognition when its requirements have been met."); *see also In re Bear Stearns*, 374 B.R. at 126 (noting that recognition of a foreign proceeding under chapter 15 is "a simple single step process" that involves a "formulaic" determination); *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 269 (Bankr. S.D.N.Y. 2019) ("Therefore, recognition of the foreign proceeding is statutorily mandated if the three requirements of section 1517(a) are met and no exception applies.").

29

<u>The Provisional Liquidation is a Foreign Main Proceeding</u>

A foreign proceeding must be either a main or nonmain proceeding to qualify for recognition under chapter 15 of the Bankruptcy Code. *See In re Bear Stearns*, 374 B.R. at 126–27 ("[T]he recognition must be coded as either main or nonmain."). The JPLs seek recognition of the Provisional Liquidation as a foreign main proceeding. *See* Motion ¶ 3.

Section 1516 of the Bankruptcy Code allows the Court to presume that the Provisional Liquidation is a foreign proceeding if the decision or certificate attached to the request for recognition indicates that the foreign proceeding is a foreign proceeding. *See* 11 U.S.C. § 1516(a) ("If the decision or certificate referred to in section 1515(b) indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume."); *see also In re Oi Brasil Holdings*, 578 B.R. at 194 ("The petition must be accompanied by certain evidentiary documents that are presumed authentic in the absence of contrary evidence."). The JPL Powers Order, attached as Exhibit G to the Second Harduth Declaration submitted together with the Motion, expressly grants the JPLs the authority to seek an amendment to the Recognition Order to recognize the "South African Proceedings as a Foreign Main Proceeding." JPL Powers Order ¶ 3.1.5. Therefore, the Court may presume that the Provisional Liquidation is a foreign proceeding.

Notwithstanding that, it is clear that the Provisional Liquidation is a foreign proceeding within the meaning of section 101(23). That section defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23); *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. at 270 ("Section 101(23) defines a 'foreign proceeding' as (1) a collective judicial or administrative proceeding under a law relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3) in which the assets and affairs of the debtor are subject to control or supervision of a foreign court, and (4) for the purpose of reorganization or liquidation."). For these purposes, the term "proceeding" refers to a "statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets and includes acts and formalities set down in law so that courts, merchants and creditors can know them in advance and apply them evenly in practice." *In re Culligan Ltd.*, No. 20-12192, 2021 WL 2787926, at *8 (Bankr. S.D.N.Y. July 2, 2021) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 277–78 (Bankr. D. Nev. 2009)). The term "foreign court" means "a judicial or other authority competent to control or supervise a foreign proceeding." 11 U.S.C. § 1502(3).

The Provisional Liquidation meets this standard. It is a collective judicial proceeding governed by the South African Insolvency Act 24 of 1936 and the Companies Act 61 of 1973, which are laws relating to the adjustment of debt. *See* Second Harduth Decl. ¶¶ 14, 23. It is a collective proceeding because all creditor claims will be adjudicated and treated in accordance with the statutory parameters set forth in the 1973 Companies Act and the Insolvency Act. *See id.* ¶ 18 ("Under South African law, after the High Court enters a Final Liquidation Order, the Master of the High Court is required to summon a meeting of creditors in order for creditors to, *inter alia*, lodge their claims against the company and nominate final liquidators."). The Provisional Liquidation is pending in South Africa, a foreign country. *Id.* ¶ 23; *see* Provisional Liquidation Order. The proceeding is supervised by the High Court and the Master of the High Court. *See id.* ¶¶ 14, 23. Under South African law, the JPLs, who were appointed by the Master of the High

Court,[32] are deemed to have custody and control over the property of Comair. *See* Second Harduth Decl. ¶ 17 (citing 1973 Companies Act § 361); *see also* 1973 Companies Act § 368 (providing for the appointment of provisional liquidators by the Master of the High Court). Finally, the Provisional Liquidation is for the purpose of reorganization or liquidation. At its current stage, it is an interim proceeding that becomes a final liquidation only upon entry of a final liquidation order. *See* Second Harduth Decl. ¶¶ 15–16. During the interim phase, a provisional liquidator may still propose a scheme of arrangement—a court-approved restructuring agreement between a company and its stakeholders. *See id.* ¶ 16. Once a final liquidation order is entered by the High Court, the Master of the High Court is required to summon a meeting of creditors at which they may lodge their claims against Comair. *See id.* ¶ 18. Thus, the Provisional Liquidation is a foreign proceeding for the purpose of reorganization or liquidation within the meaning of section 101(23) of the Bankruptcy Code.

Section 1517(b)(1) requires recognition of the foreign proceeding as a "foreign main proceeding" if it is "pending in the country where the debtor has the center of its main interests" or "COMI." 11 U.S.C. § 1517(b)(1); *see* 11 U.S.C. § 1502(4) (defining "foreign main proceeding" as a "foreign proceeding pending in the country where the debtor has the center of its main interests"); *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 248 (2d Cir. 2013) (applying this definition).

On April 13, 2021, this Court found that Comair's center of main interests was located in South Africa, where the Business Rescue Proceeding was pending. Recognition Order ¶ L. The

---

[32]    On June 23, 2022, the High Court certified the appointment of the JPLs. *See* Second Harduth Decl. ¶ 21; *see also* Certificate of Appointment.

Court, therefore, recognized the Business Rescue Proceeding as a foreign main proceeding. *Id.* ¶ 2. The JPLs contend that their appointment did "nothing to alter the Debtor's center of main interests." Motion ¶ 24; *see* Second Harduth Decl. ¶ 24 ("Comair is a company registered under the laws of South Africa with its center of main interest in South Africa and with substantial connections to South Africa."). Boeing does not dispute that South Africa remains the Debtor's COMI. Section 1516(c) provides that, in the absence of evidence to the contrary, a debtor's registered office or habitual residence "is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *see In re SPhinX Ltd.*, 351 B.R. at 117. Comair's registered business address is located in the Gauteng province of South Africa. *See* Motion at 1 n.1; *see also* Harduth Decl. ¶ 24 ("Comair is a company registered under the laws of South Africa with its center of main interest in South Africa and with substantial connections to South Africa."). The Court sees no reason to disturb its prior determination that Comair's COMI is in South Africa. Accordingly, the Provisional Liquidation is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code. *See In re Ocean Rig UDW Inc.*, 570 B.R. 687, 702 (Bankr. S.D.N.Y. 2017) ("A foreign proceeding shall be recognized as a foreign main proceeding if it is pending where the debtor has its COMI.").

<u>The JPLs are the Foreign Representative of Comair</u>

The JPLs also request modification of the Recognition Order to recognize the JPLs as the foreign representative of Comair. Motion ¶ 3. Section 101(24) defines a "foreign representative" as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24); *see In re Barnet*, 737 F.3d at 248. "The term 'person' includes individual, partnership, and corporation, but does not include governmental unit," with exceptions for certain governmental units that are not now relevant. 11 U.S.C. 101(41). The term "body" is undefined in the Bankruptcy Code.

Section 1516 of the Bankruptcy Code allows the Court to presume that a person or body is a foreign representative if the decision or certificate filed in support of recognition indicates as much. 11 U.S.C. § 1516(a) ("If the decision or certificate referred to in section 1515(b) indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume."); *see In re Oi Brasil Holdings*, 578 B.R. at 194. As discussed, the High Court expressly authorized the JPLs to move this Court to amend the Recognition Order to be "appointed as the new foreign representative." JPL Powers Order ¶ 3.1.5. Accordingly, the Court may presume that the JPLs are the foreign representative of Comair. The JPLs are individual persons who were appointed by the High Court as joint provisional liquidators of Comair. *See* Certificate of Appointment at 1. As liquidators, they are empowered with custody and control of the Debtor's property. *See* Second Harduth Decl. ¶ 17 (citing 1973 Companies Act § 361).

Each of the JPLs is an individual who was appointed as a provisional liquidator in the Provisional Liquidation. Upon the appointment of the JPLs, "all the powers of the company's directors cease, except to the extent specifically authorised . . . by the liquidator or the shareholders in a general meeting . . . [or] the creditors." Companies Act § 80(8)(b). The JPLs have custody and control of Comair's property. *See* Second Harduth Decl. ¶ 17 (citing 1973 Companies Act § 361); *see also* 1973 Companies Act § 367 ("For the purpose of conducting the proceedings in a winding-up of a company the Master shall appoint a liquidator or liquidators as hereinafter

provided."). Therefore, the JPLs satisfy the requirements that they each be a "person" pursuant to section 1517(a)(2) and are entitled to recognition as foreign representatives of Comair. *See In re Culligan Ltd.*, 2021 WL 2787926, at *9 (Bankr. S.D.N.Y. July 2, 2021) (holding that two individuals serving as joint liquidators in Bermuda proceeding were "foreign representatives" within the meaning of section 101(24)).

### Whether the Motion Meets the Requirements of Section 1515

Section 1515(a) of the Bankruptcy Code provides that a foreign representative applies for recognition by filing a petition for recognition. 11 U.S.C. § 1515(a).[33] On February 16, 2021, the BRPs commenced this proceeding by filing an Official Form 401 Chapter 15 Petition for Recognition of a Foreign Proceeding.[34] In granting recognition to the Business Rescue Proceeding, the Court determined that the BRPs had "satisfied the requirements of 11 U.S.C. § 1515." Recognition Order ¶ I. Section 1515(b) and (c) set forth requirements for a petition for recognition. Because the Motion amounts to a request for recognition, the Court must assess whether it satisfies the substantive requirements set forth in section 1515(b) and (c).

As now relevant, section 1515(b) requires that a chapter 15 petition be accompanied by either:

---

[33]  Courts have held that section 1515 "requires a separate petition for each foreign action for which recognition is sought." *In re Brit. Am. Ins. Co. Ltd.*, 425 B.R. at 889. In *British American*, the court construed a petition seeking recognition of a proceeding in The Bahamas and another in Saint Vincent and Grenadines as requesting recognition only of the Bahamas proceeding in light of section 1515's requirement. *See id.* Here, the two distinct proceedings are not concurrent or in different jurisdictions. To the extent section 1515 would apply to a request for modification of recognition pursuant to section 1517(d), because the Business Rescue Proceeding has been discontinued and the Provisional Liquidation qualifies as the foreign main proceeding in its stead, the Court declines to impose an additional requirement that the JPLs' request for modification of recognition be in the form of a petition in strict compliance with section 1515.

[34]  *Chapter 15 Petition for Recognition of Foreign Proceeding*, ECF No. 1.

(1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b). As set forth above, the JPLs provided the Court with a copy of the Provisional Liquidation Order granting the JPLs' Winding Up Application issued by the High Court on June 14, 2022. *See* Provisional Liquidation Order.[35] They also included a copy of the Certificate of Appointment, pursuant to which the High Court certified the appointment of the JPLs by the Master of the High Court. *See* Certificate of Appointment. The Court finds the documents acceptable to evidence the existence of the Provisional Liquidation and the appointment of the JPLs. *See In re Betcorp. Ltd.*, 400 B.R. at 294 ("[Section 1516] may be satisfied with 'any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.'" (quoting 11 U.S.C. 1515(b)(3))).

Section 1515(c) requires that a petition for recognition be accompanied by "a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c); *In re Poymanov*, 571 B.R. 24, 38 (Bankr. S.D.N.Y. 2017). In her declaration, Ms. Harduth states, "Other than this chapter 15 case, the Provisional Liquidation is the only proceeding related to the adjustment of debts pending for Comair and, therefore, is the only 'foreign proceeding' with respect to Comair within the meaning of section 101(23) of the

---

[35]    Under South African law, a provisional liquidation is deemed to commence at the time the winding up application is presented to the High Court. *See* Second Harduth Decl. ¶ 15 (citing 1973 Companies Act § 348).

Bankruptcy Code." Harduth Decl. ¶ 25. The JPLs have, therefore, satisfied all the requirements set forth in section 1515 of the Bankruptcy Code.

Public Policy Considerations

Section 1506 provides an exception to recognition or any other requested relief if it is "manifestly contrary" to U.S. public policy. That exception is narrowly interpreted. *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 139 (2d Cir. 2013) ("The UNCITRAL Guide further explains that the exception should be read 'restrictively' and invoked only 'under exceptional circumstances concerning matters of fundamental importance for the enacting state.'); *see In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) ("In adopting Chapter 15, Congress instructed the courts that the [public policy] exception . . . should be narrowly interpreted . . . .") (quoting House Report at 109); *see also In re Toft*, 453 B.R. 186, 193 (Bankr. S.D.N.Y. 2011) ("The public policy exception is clearly drafted in narrow terms, as the action must be 'manifestly contrary' to the public policy of the United States.").

Boeing has not identified any public policy that merits a refusal to recognize to the Provisional Liquidation. On at least one other occasion, a court in this district has recognized an insolvency proceeding pending in South Africa. *See In re Cell C Proprietary Limited*, 571 B.R. 542, 544 (Bankr. S.D.N.Y. 2017) (recognizing a South African proceeding under section 155 of the Companies Act). Courts have also routinely granted recognition to foreign provisional liquidations. *See In re Culligan*, 2021 WL 2787926, at *8 (recognizing Bermudian provisional liquidation); *see also In re Ocean Rig UDW Inc.*, 570 B.R. 687, 702 (Bankr. S.D.N.Y. 2017) (recognizing Cayman provisional liquidation); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 417 (Bankr. S.D.N.Y. 2014) (same); *In re Olinda Star Ltd.*, 614 B.R. 28, 45 (Bankr. S.D.N.Y.

2020) (recognizing BVI provisional liquidation); *In re Fairfield Sentry Ltd.*, No. 10 Civ. 7311, 2011 WL 4357421, at *1 (S.D.N.Y. Sept. 16, 2011) (same).

As noted by the JPLs, Boeing does not identify a single statutory criterion that the JPLs or the Provisional Liquidation have failed to satisfy. Based on the foregoing, the Court grants the Motion to amend the Recognition Order to recognize the Provisional Liquidation as a foreign main proceeding within the meaning of section 101(23) and the JPLs as the foreign representative of Comair within the meaning of section 101(24), pursuant to section 1517(d) of the Bankruptcy Code. In doing so, the Court has considered the prejudice to the parties that have relied on the Recognition Order. *See* 11 U.S.C. § 1517(d). The prejudice to the JPLs and Comair that would result from requiring the BRPs to file a final report, closing the case and requiring the JPLs to file another petition for recognition far outweighs any prejudice to Boeing, which was afforded the opportunity to address why section 1517(d) should not apply to the JPLs' request and to scrutinize whether the Provisional Liquidation or the JPLs meet the statutory criteria for recognition, but failed to do so in its Objection. *Cf. In re Sanjel (USA) Inc.*, No. 16-50778, 2016 WL 4427075, at *4 (Bankr. W.D. Tex. July 29, 2016) (finding that the court was able to modify relief granted pursuant to § 1522(c) despite movants' failure to specify the statutory provisions relied upon where the motion provided sufficient notice of the intended result).

<u>Whether the JPLs may be Substituted for the Business Rescue Practitioners Pursuant to Rule 25(c)</u>

As an alternative basis for granting the relief sought in this motion, the JPLs rely on Federal Rule of Civil Procedure 25(c), arguing that they may be substituted for the BRPs because there has been a transfer of interest from the BRPs to the JPLs. In relevant part, Rule 25(c) provides as follows: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the

original party." Fed. R. Civ. P. 25(c). Rule 25(c) is made applicable herein pursuant to Bankruptcy

Rules 7025 and 9014.

The JPLs contend that Rule 25(c) is "frequently invoked to substitute a chapter 7 trustee

for a debtor-in-possession after a chapter 11 case has been converted to a liquidation under chapter

7." Motion ¶ 32. Substitution is warranted in such cases because "possession, custody, or control

of the debtor's assets are transferred to the trustee." *Id.* (citing *In re ATS Prod. Corp.*, No.

01-13220F, 2003 WL 25947346, at *2 n.4 (Bankr. E.D. Pa. June 5, 2003); *In re Rose Marine, Inc.*,

No. 86-40143, 1990 WL 10007382, at *1 (Bankr. S.D. Ga. Apr. 27, 1990); *Corbin v. Blankenburg*,

39 F.3d 650, 653 (6th Cir. 1994)). The JPLs also point to a case in which they say "a successor

foreign representative" was substituted "for a predecessor foreign representative." *Id.* ¶ 33 (citing

*In re Stanford Int'l Bank, Ltd.*, No. 09-cv-0721, 2012 WL 13093940, at *2 (N.D. Tex. July 30,

2012)). Along these lines, the JPLs contend that they are successors to the BRPs, and so they

should be substituted for the BRPs under Rule 25. *See id.* ¶ 34. The JPLs contend that the BRPs'

interest in investigating estate causes of action and instituting litigation was transferred to them

and that they have replaced the BRPs as the fiduciaries authorized under South African law to act

on Comair's behalf. Reply at 9. They note that courts have authorized substitution in the analogous

circumstance where a trustee is substituted for a debtor-in-possession following a conversion to

chapter 7. *Id.* They maintain that the JPL Powers Order charges the JPLs with the same duties,

authorizing them to "employ individuals for the purpose of tracing assets, compiling inventories

and taking possession of the assets of Comair," to "investigate the trade, dealings and affairs of

Comair and to value its assets," and to "be substituted for the [BRPs] in all capacities." *Id.* at 8–9

(citing JPL Powers Order).

Boeing distinguishes *Stanford*, asserting that that case involved a replacement of joint liquidators by new joint liquidators in the same foreign proceeding, "prior to the U.S. court's consideration of the Chapter 15 petition." Objection ¶ 33. The new joint liquidators moved only "to be substituted for the prior joint liquidators as *proposed* foreign representatives." *Id.* (emphasis added). Here, Boeing argues that the JPLs "do not occupy the same office as the former BRPs." *Id.* ¶ 34. Similarly, the JPLs' duty to distribute liquidation proceeds to creditors differs from the BRPs' interests in rescuing the company, and so the two groups' interests purportedly are not the same. *Id.* ¶ 34. Boeing repeats, again, its view that the "Provisional Liquidation is not the same proceeding as the Business Rescue Proceeding previously recognized by the Court, as it arises under a completely different statutory scheme in South Africa." *Id.*

Federal Rule of Civil Procedure 25 provides for the substitution of parties in certain circumstances, including death, incompetency and when a public officer dies, resigns or otherwise ceases to hold office while an action is pending. *See* Fed. R. Civ. P. 25. Specifically, Rule 25(c) provides:

> Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

Fed. R. Civ. P. 25(c). A determination that a party is, in fact, a successor-in-interest is a prerequisite to substitution under Rule 25(c). *See Levin v. Raynor*, No. 03-cv-4697, 2010 WL 2106037, at *2 (S.D.N.Y. May 25, 2010). Substitution of a successor in interest under Rule 25(c) is within the sound discretion of the Court. *Organic Cow, LLC v. Ctr. for New Eng. Dairy Compact Rsch.*, 335 F.3d 66, 71 (2d Cir. 2003). The "primary consideration" when determining whether to substitute a party is "whether substitution will expedite and simplify the action." *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 269 F.R.D. 335, 359 (S.D.N.Y. 2010) (quoting *Taberna Cap. Mgmt.*

*v. Jaggi*, 08-CV-11355, 2010 WL 1424002, at *2 (S.D.N.Y. Apr. 9, 2010)); *see also Banyai v. Mazur*, No. 00 Civ. 9806, 2009 WL 3754198, at *3 (S.D.N.Y. Nov. 5, 2009) (noting that "district courts within the Second Circuit have suggested that a primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action"). "When substitution would cause complications in discovery, this may prejudice the non-moving party such that substitution should be denied." *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-00007, 2021 WL 3706909, at *2 (E.D.N.Y. Aug. 6, 2021) (citing *Potvin v. Speedway LLC*, 891 F.3d 410, 416 (1st Cir. 2018)); *see also Fashion G5 LLC v. Anstalt*, No. 14-CV-5719, 2016 WL 7009043, at *3 (S.D.N.Y. Nov. 29, 2016) (denying substitution that would "impede plaintiff's ability to take discovery"). Substitution is "inappropriate where it 'would serve only to add duration, costs, and complexity to an action . . . [and] would prolong rather than bring the litigation nearer to its conclusion." *Id.* (quoting *Advanced Mktg. Grp.*, 269 F.R.D. at 359).

In *Stanford*, as now relevant, an Antiguan court placed the debtor into liquidation and appointed two individuals as joint liquidators, shortly after which those initial joint liquidators filed a chapter 15 petition. *In re Stanford Int'l Bank*, 2012 WL 13093940, at *1. While that petition was pending, the Antiguan court removed both initial joint liquidators. *Id.* at *2. Two replacement liquidators were appointed by the Antiguan court, and they subsequently filed a motion that asked the court to substitute them for the former liquidators in the U.S. case. *Id.* The bankruptcy court applied Rule 25(c), substituting the replacement liquidators. *Id.* at *5 (noting "(a) that courts may continue suits by substituting a new party in interest for a party who has lost an interest in the action if authorized by substantive law, and (b) that Congress' intention in cases involving trustees is to continue the suit by substituting the new trustee for the old"). Although that case dealt with individuals appointed as replacement liquidators, and the substitution of JPLs for BRPs is a little

more complex, *Stanford* makes it clear that Rule 25 relief is available to substitute foreign representatives where there is a transfer in interest. *See id.*

In South Africa, the JPLs have been appointed as fiduciaries of Comair's estate. *See* Certificate of Appointment at 1; Second Harduth Decl. ¶ 17 (indicating that, under 1973 Companies Act § 361, Comair's property is deemed to be in the custody and under the control of the JPLs). South African law grants liquidators the power to bring and defend litigation on behalf of Comair. Second Harduth Decl. ¶ 19 (citing 1973 Companies Act § 386). The High Court granted the JPLs the authority to "continue and/or settle any legal proceedings of whatever nature, whether already instituted or which may be instituted on behalf of or against the estate, on such terms as the applicants in their discretion may deem fit." JPL Powers Order ¶ 3.7. The High Court also authorized the JPLs to "notify the New York Bankruptcy Court that the [JPLs] as the new foreign representative have ratified the [BRPs'] decision to obtain discovery from Boeing and that the applicants be substituted for the former foreign representative in all capacities." *Id.* ¶ 3.1.6. The discovery dispute between the BRPs and Boeing is a contested matter pending before the Court. It is clear that the purpose of this proceeding is to pursue discovery against Boeing in respect of potentially valuable causes of action Comair might have relating to their commercial transaction. Putting any doubt to rest, the High Court also expressly granted the JPLs the authority to seek to amend the Recognition Order to recognize the "South African Proceedings as a Foreign Main Proceeding, with the [JPLs] as provisional liquidators being appointed as the new foreign representative." JPL Powers Order ¶ 3.1.5.

Moreover, Boeing has not disputed that the JPLs are enabled by South African law and the High Court to institute litigation, to investigate the trade, dealings and affairs between Comair and Boeing and to value its assets, which include the causes of action it may have against Boeing. The

42

High Court expressly granted the JPLs the authority to notify this Court that they have ratified the BRPs' decision to pursue discovery against Boeing and that they "be substituted for the former foreign representative in all capacities." JPL Powers Order ¶ 3.1.6. Neither does Boeing dispute that the JPLs are now the duly appointed fiduciary of Comair's estate with custody and control of the Debtor's property. *See* Harduth Decl. ¶ 171; *see also* 1973 Companies Act § 361). Because the BRPs no longer exist or have authority to act on behalf of Comair since the JPLs replaced them as the fiduciary of Comair's estate in the jurisdiction of its foreign main proceeding, the Court grants the JPLs' request to be substituted for the BRPs' pursuant to Rule 25(c). *See Fashion G5 LLC v. Anstalt*, 2016 WL 7009043, at *2 ("[S]ubstitution under Fed. R. Civ. P. 25(c) is common in cases where a party has ceased to exist . . . ."). Substituting the JPLs for the BRPs will "expedite and simplify the action" and would not cause complications in discovery or prejudice Boeing. *Advanced Mktg. Grp.*, 269 F.R.D. at 359; *see Bartlett*, 2021 WL 3706909, at *2; *Dollar Dry Dock Sav. Bank v. Hudson Street Development Associates*, No. 92 Civ. 3737, 1995 WL 412572, at *4 (S.D.N.Y. July 12, 1995) ("Brown has provided no valid reason why IOWNA should not be substituted as plaintiff in this action. Because IOWNA is the undisputed real party in interest and its substitution as plaintiff will facilitate this action, the motion for substitution under Rule 25(c) is granted."). Thus, applying law to facts, the Court determines that the JPLs are successors to the BRPs as Foreign Representative. *See Organic Cow, LLC*, 335 F.3d at 71.

Accordingly, the Court modifies the Discovery Order to authorize the JPLs to continue the BRPs' efforts to obtain discovery from Boeing in respect of the claims Comair has against it and to be substituted for the BRPs pursuant to Rule 25(c). In doing so, the Court is comforted that the interests of creditors and other interested entities, including the Debtor, are sufficiently protected because they will need to expend less time and resources on motion practice disputing the same

issues were the JPLs forced to file their own motion for the same relief that has previously been granted to the BRPs by this Court. *See In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. at 108 (modification of relief pursuant to section 1522(c) only permitted if the interests of the creditors and other interested entities are sufficiently protected); *see also In re Rede Energia S.A.*, 515 B.R. at 91 ("Chapter 15 . . . provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity.").

Rule 5009(c)

As a final note, the Court finds no merit to Boeing's contention that the BRPs are required to file a 5009(c) report. That rule requires the foreign representative to file a final report with the Court when the "purpose of the representative's appearance in the court is completed." Fed. R. Bankr. P. 5009(c). Boeing argues that, because the purpose of the BRPs' appearance in the Court is completed, Rule 5009(c) requires them to file a final report which would result in "dismissal of this Chapter 15 case." Obj. ¶ 4. The BRPs' purpose is completed, it maintains, because "their roles are indisputably complete," and the BRPs have lost their authority to act for Comair. *Id.* ¶¶ 16, 23, 26, 30. It draws attention to the fact that the Business Rescue Proceeding has been discontinued and argues that the predicate for this chapter 15 case no longer exists. *Id.* ¶¶ 16, 23, 26. Assuming the Court were able to direct the BRPs to file the final report, the Rule requires the filing of a report only when the purpose for the foreign representative's appearance before the Court is "completed." Fed. R. Bankr. P. 5009(c); *see In re Lupatech S.A.*, 611 B.R. 496, 503 (Bankr. S.D.N.Y. 2020).

Bankruptcy Rule 5009 is a ministerial rule meant to provide the Clerk of the Bankruptcy Court with notice that it may close a case as fully administered. *See Giron v. Zeytuna, Inc.*, No. 20-cv-1977, 2022 WL 856385, at *11 (D.D.C. Mar. 23, 2022) ("It has long been recognized that Rule 5009 (a) is a ministerial rule governing when the Clerk of the Bankruptcy Court may close a

bankruptcy case." (citing *In re Potter*, No. 19-60216, 2020 WL 6928782, at *18 (Bankr. S.D. Ill. Oct. 30, 2020))). In the chapter 15 case of *In re Lupatech S.A.*, the court considered fully administered to mean "at a minimum, that administrative claims have been provided for, and there are no outstanding motions, contested matters or adversary proceedings." *In re Lupatech S.A.*, 611 B.R. at 503 (citing *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 546 (Bankr. E.D.N.Y. 1999)). "The intended meaning of section 1517(d) of the Bankruptcy Code and Bankruptcy Rule 5009(c) is clear: once the need for a chapter 15 case no longer exists and the purpose of the representative's appearance in the U.S. court is completed, the case may be closed." *Id.* In light of the foregoing, and because the undisputed facts in the record do not support a conclusion that the Debtor's Chapter 15 Case is fully administered, the Court rejects Boeing's request to close the case by requiring the BRPs to file a final report pursuant to Bankruptcy Rule 5009.

## Conclusion

Based on the foregoing, the Court grants the Motion and the JPLs' request to amend the Recognition Order to recognize the Provisional Liquidation as a foreign main proceeding and the JPLs as the foreign representative of Comair. The Court also grants the JPLs' request to be substituted for the BRPs in all contested matters, including the discovery dispute with Boeing.

Comair is directed to settle an order.

Dated: New York, New York
February 12, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge